# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JPMORGAN CHASE BANK, N.A.,     )
successor in interest to the First National Bank    )
of Chicago,     )
     )
     Plaintiff,     )
     )
     v.     )     No. 02 C 6240
     )
PT INDAH KIAT PULP AND PAPER    )
CORPORATION Tbk, a corporation duly    )
organized under the laws of the Republic of    )
Indonesia; PT PABRIK KERTAS TJIWI KIMIA    )
Tbk, a corporation duly organized under the laws    )
of the Republic of Indonesia; and ASIA PULP    )
AND PAPER COMPANY, LTD., a corporation    )
duly organized under the laws of Singapore,    )
     )
     Defendants.     )

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff JPMorgan Chase Bank, N.A., successor in interest to the First National Bank of Chicago (collectively "JPMorgan"),[1] alleges in its first amended complaint that defendants PT Indah Kiat Pulp and Paper Corporation, Tbk ("IK"), PT Pabrik Kertas Tjiwi Kimia, Tbk ("TK"), and Asia Pulp and Paper Company, Ltd. ("APP") are liable to JPMorgan for breaching the terms and conditions of certain promissory notes and guarantees. Each defendant has asserted several affirmative defenses in their answers to these claims, and APP has alleged a counterclaim under the

---

[1]  JPMorgan is also the successor in interest to the original plaintiff in this case, Bank One, N.A.

Uniform Commercial Code ("U.C.C.") based on a breach of implied warranty. This court has subject-matter jurisdiction over the claims at issue in this case pursuant to 28 U.S.C. § 1332(a)(2).

Now pending before the court is JPMorgan's "Motion and Memorandum of Law in Support of Summary Judgment Against Indah Kiat and Tjiwi Kimia," [220]. For the reasons set forth below, this court grants JPMorgan's motion for summary judgment.

BACKGROUND

When ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmovant's favor. *Omega Healthcare Investors, Inc. v. Res-care, Inc.*, 475 F.3d 853, 857 (7th Cir. 2007). In light of this principal, the following are the facts of this case, construed in the light most favorable to IK and TK.

In 1996, APP and Beloit Corporation ("Beloit") entered into two contracts for APP's purchase of two paper-making machines known as the PPM3 and the MPM11. In 1997, IK and TK assumed all of APP's rights and obligations pursuant to Clause 12 of the PPM3 and MPM11 contracts. Specifically, IK purchased the PPM3 machine, and TK purchased the MPM11 machine. To facilitate Beloit's financing of the construction of these machines, on April 25, 1998 both IK and TK executed promissory notes in favor of Beloit, and IK, TK, and Beloit entered into accompanying Credit Agreements. The original IK promissory note was in the amount of $21,809,962.00, and the original TK promissory note was in the amount of $16,213,352.00. The same day those promissory notes were executed, April 25, 1998, Beloit and JPMorgan entered into a Note Purchase Agreement whereby Beloit sold to JPMorgan all of its right, title, and interest in the two notes. In addition,

Beloit executed and delivered to JPMorgan a Form of Notice and Endorsement, dated April 29, 1998, which assigned and transferred Beloit's right, title, and interest in the two notes to JPMorgan.

On September 24, 1998, IK and TK executed and delivered to Beloit new promissory notes which replaced and superseded the original notes in the principal amounts of $26,701,678.00 (the "IK Note") and $17,123,488.75 (the "TK Note"). (IK Note and Guarantee 1, attached as Ex. 13 to Pl.'s Mem. Supp. Mot. Summ. J.; TK Note and Guarantee 1, attached as Ex. 23 to Pl.'s Mem. Supp. Mot. Summ. J.)[2] The Credit Agreement related to each respective note was amended to reflect the higher amounts. (IK Credit Agreement 7, attached as Ex. 6 to Dep. Djongianto ("Djongianto") November 17, 2007; TK Credit Agreement 7, attached as Ex. 19 to Pl.'s Mem. Supp. Mot. Summ. J.)

Also on September 24, 1998, APP executed guarantees on both the IK Note and the TK Note (respectively, the "IK Guarantee" and the "TK Guarantee") and delivered them to Beloit, unconditionally guaranteeing payment of all obligations of IK and TK arising under either Note.

On September 30, 1998, Beloit and JPMorgan amended the Note Purchase Agreement to reflect the increased balance of both the IK and TK promissory notes. That same day, September 30, 1998, Beloit executed and delivered to JPMorgan a new Form of Notice and Endorsement which assigned and transferred all of Beloit's right, title, and interest in the IK and TK Notes to JPMorgan.

On October 3, 2000, IK, TK, APP, Beloit, Beloit Asia Pacific (L), Inc. ("BAPL"), Beloit Asia Pacific PTE, Ltd. ("BAP"), and Harnischfeger Industries, Inc. ("Harnischfeger"), entered into a Deed of Settlement (the "Settlement") to settle disputes, claims, controversies, and other matters in conflict involving certain "Disputed Contracts," including the PPM3 and MPM11 contracts.

---

[2] The guarantees executed by APP are attached to the IK and TK Notes; together they form one document.

(Pl.'s Mem. Supp. Mot. Summ. J. 8.)  The Settlement specifically released Beloit, BAP, BAPL, and Harnischfeger and its successors from all claims relating to the sale, installation, or operation of the PPM3 and MPM11 machines.  The Settlement also recognized that IK, TK, and APP were not released from their obligations to repay the IK and TK Notes.

IK and TK made or caused to be made payments of interest and principal to JPMorgan or one of its predecessors-in-interest on their respective Notes in 1998, 1999, and 2000.  IK and TK have not made any further payments since October 11, 2000.

On September 14, 2001, JPMorgan sent notice to both IK and TK informing them that, based on their failure to make a payment on the Notes, they were in default under the terms of their respective Notes as of April 2, 2001.  Pursuant to an acceleration clause in the IK and TK Notes, JPMorgan declared all unpaid principal and accrued interest immediately to be due and payable.  As no further payments have been made on either promissory note, JPMorgan filed this action on August 30, 2002 to collect monies allegedly owed on the IK and TK Notes.

## LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmovants's favor.  *Omega Healthcare Investors, Inc. v. Res-Case, Inc.*, 475 F.3d 853, 857 (7th Cir. 2007).  However, "[o]nce a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary

materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAm., L.L.C.*, 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)).

In ruling on a motion for summary judgment, the court does not make credibility determinations or weigh conflicting evidence. *Abdullahi v. City of Madison*, 423 F. 3d 763, 773 (7th Cir. 2005). Instead, it only determines whether a genuine issue of material fact exists for trial, or in other words, whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996). The evidence relied upon must be competent evidence of a type otherwise admissible at trial. *Id.*

## ANALYSIS

1. JPMorgan's Prima Facie Case for Breach of Contract

In its first amended complaint [12], JPMorgan alleges that both IK and TK are liable for breach of contract for failing to make payments on the two Notes. Under the U.C.C., 810 ILCS 5/3-307 (West 2009), if the holder of a negotiable instrument introduces the instrument and the signatures are not disputed, the holder is entitled to recover unless a defense to the instrument is established. *See also Bank of N.C., N.A. v. Rock Island Bank*, 630 F.2d 1243, 1247 (7th Cir. 1980). To prevail on its claim for breach of contract, therefore, JPMorgan must produce the promissory notes it seeks to enforce and demonstrate the validity of the signatures that the promissory notes contain. Additionally, because the Notes initially were executed and delivered in favor of Beloit, JPMorgan must demonstrate that it, JPMorgan, is the legitimate holder of the Notes. *See* U.C.C., 810 ILCS 5/1-201(21)(A) (West 2009) (defining "holder" as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in

possession"). Lastly, JPMorgan must prove that it is immediately entitled to the remaining balance due under the Notes despite the Notes' payment schedules. Specifically, it must show that a default occurred under the terms of the Notes and Credit Agreements. (IK Note and Guarantee 1; TK Note and Guarantee 1.) If JPMorgan proves all four elements, then the burden then shifts to IK and TK to establish a defense that prevents enforcement of the Notes. *Bank of N.C.*, 630 F.2d at 1247.

Here, the court finds that JPMorgan satisfies its prima facie case for breach of contract. JPMorgan has provided copies of the IK and TK Notes, as well as the related Credit Agreements. (*See* 1st Am. Compl., Exs. H-K.) Neither IK nor TK dispute that these documents are true and accurate copies of the originals, and they admit that they executed and delivered promissory notes to Beloit. (Defs.' Ans. Pl.'s Req. Admit Certain Facts ¶ 4, attached as Ex. 6 of Pl.'s Mem. Supp. Mot. Summ. J.; Defs.' Statement Material Facts ¶¶ 15, 36.) IK and TK also do not dispute that JPMorgan purchased the Notes from Beloit and is the legitimate holder of the Notes. (*See* Defs.' Statement Material Facts ¶¶ 19, 40.)

Finally, JPMorgan has demonstrated that IK and TK defaulted on the Notes and Credit Agreements by ceasing their payments in October of 2000. (Defs.' Statement Material Facts ¶¶ 24, 45; IK Credit Agreement 7; TK Credit Agreement 7.) Under the terms of the Notes and the Credit Agreements, a failure of payment which is not cured within ten days results in a default, accelerating all payments due under the instrument and making the total balance due and payable immediately. (IK Note and Guarantee 1; TK Note and Guarantee 1.) Consequently, JPMorgan has established all the requisite elements of its prima facie case.

2.      IK and TK's Affirmative Defenses

The court's analysis now shifts to determining whether there is sufficient evidence, when considered in IK and TK's favor, to support that IK and TK are not liable to JPMorgan for their default. *See Bank of N.C.*, 630 F.2d at 1247. IK and TK have asserted seven affirmative defenses: (1) Beloit violated the implied warranty of merchantability with respect to the PPM3 and MPM11; (2) Beloit violated the implied warranty of fitness for a particular purpose with respect to the PPM3 and MPM11; (3) Beloit made fraudulent misrepresentations with the purpose of inducing IK and TK to enter into the Credit Agreements and sign the Notes for the purchase of the PPM3 and MPM11; (4) Beloit breached an implied warranty entitling IK and TK to consequential damages;[3] (5) the IK and TK Notes are unenforceable due to their issuance for a special purpose; (6) the IK and TK Notes lack consideration; and (7) JPMorgan is not a holder-in-due-course.[4] The court will discuss each affirmative defense in turn.

a.      IK and TK's First, Second, and Fourth Affirmative Defenses: Beloit Allegedly Breached (a) an Implied Warranty of Merchantability, (b) an Implied Warranty of Fitness for a Particular Purpose, and (c) an Implied Warranty Entitling IK and TK to Consequential Damages

According to IK and TK, Beloit breached several warranties in connection with the PPM3 and MPM11 contracts and, as a result, the promissory notes executed in connection with those

_____

[3] IK and TK's fourth affirmative defense, the breach of an implied warranty entitling IK and TK to consequential damages, does not appear to be a separate affirmative defense but rather is a counter-claim seeking damages. Because this "defense" mirrors IK and TK's other implied warranty affirmative defenses, the court will address it with those related defenses.

[4] Because JPMorgan stepped into the shoes of Beloit by purchasing the IK and TK notes, IK and TK can assert defenses against JPMorgan that they could assert against Beloit. *See, e.g., Community Bank v. Carter*, 669 N.E.2d 1317, 1319 (Ill. App. Ct. 1996) (recognizing that the assignee is placed "in the shoes" of the assignor and has the same rights, title, and interest as the assignor). Conversely, if IK and TK would be barred from bringing a certain defense against Beloit, they may not assert the same defense against JPMorgan. *See John O. Shofield, Inc. v. Nikkel*, 731 N.E.2d 915, 925 (Ill. App. Ct. 2000) ("It is well settled in Illinois that . . . the assignee . . . takes the assignor's interest subject to all legal and equitable defenses existing at the time of the assignment." (quoting *Stavros v. Karkomi*, 349 N.E.2d 599 (1976))).

contracts are unenforceable. JPMorgan, however, contends that even if these warranties did exist, IK and TK's breach of implied warranty defenses are barred by the Settlement executed between Beloit, IK, and TK. The court agrees that JPMorgan's position is legally correct based on the undisputed material facts viewed in favor of IK and TK.

The Settlement is a contractual release of claims between the parties and is therefore governed by contract law. *See Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1999). Where no ambiguity exists, construction of a contract is a matter of law for the court, and the intention of the parties must be determined from the instrument itself. *Id.*

Clause 10(A) of the Settlement's "Release and Discharge" section, which was quoted in JPMorgan's reply brief, explains what rights Beloit discharged:

> Each of the Beloit Entities and Harnischfeger hereby releases the APP Parties[5] and each of their officers, directors, employees, agents, shareholders and successors from all claims and waives all rights against them, whether such claims or rights are known or unknown, accrued or to accrue, in connection with or in any way pertaining to the Disputed Contracts, *except as set forth in Clause 10(C)*. Harnischfeger agrees to indemnify APP, [IK] and TK against any claims arising out of or in connection with the Disputed Contracts by Beloit Entities.

(Dkt. 240, Pl.'s Reply Supp. Mot. Summ. J. 8. (emphasis added).)

The exception referenced in Clause 10(C) explains that the Settlement did not affect Beloit's right to enforce the Notes:

> The APP Parties are not released from their obligations to pay or repay any promissory notes issued to [Beloit Corporation] or other financing or loans relating to the PPM3 and MPM11 Contracts, including but not limited to financing or loans made by Export Credit Agencies or financing or loans supported by Export Credit Agency guarantees. In addition, the Beloit Entities' rights with respect to such promissory notes, financing and loans are not affected by this deed.

Clause 10(B) explains what rights the APP Parties discharged:

---

[5] The APP Parties include APP, IK, and TK. (Pl.'s Mem. Supp. Mot. Summ. J. 8.)

Each of the APP Parties hereby releases the Beloit Entities and Harnischfeger, their affiliates and each of their officers, directors, employees, agents, shareholders and successors from all claims and waives all rights against them, whether such claims or rights are known or unknown, accrued or to accrue, in connection with or in any way pertaining to the Disputed Contracts. APP agrees to indemnify the Beloit Entities and Harnischfeger against any claims arising out of and in connection with the Disputed Contracts by the APP Parties.

The clear and unambiguous language of Clause 10(B) states that the APP parties "release[d] . . . from all claims and waive[d] *all rights* against [the Beloit Entities] in connection with or in any way pertaining to the Disputed Contracts." (Pl.'s Reply Supp. Mot. Summ. J. 8.) Rights include affirmative defenses. *See Sepmeyer v. Holman*, 642 N.E.2d 1242, 1245 (Ill. 1994) (recognizing that affirmative defenses are rights that vest when a cause of action arises). Notably, Clause 10(B) does not limit the scope of APP's release or provide any exceptions for IK and TK's affirmative defenses arising under the Notes.

According to IK and TK, however, the definition of "Disputed Contracts" in the Settlement does not include the Notes, and the Settlement therefore does not bar their affirmative defenses arising out of those Notes. (Dkt. 234, Defs.' Mem. Resp. Pl.'s Mot. Summ. J. 5.) While the court agrees that the Notes are not "Disputed Contracts" under the Settlement, the clear language of the Settlement establishes that they are *connected to* and *pertain to* the Disputed Contracts. Clause 10(A), as discussed above, provides that "[e]ach of the Beloit Entities and Harnischfeger hereby releases the APP Parties . . . from all claims and waives all rights against them . . . *in connection with or in any way pertaining to* the Disputed Contracts, *except as set forth in Clause 10(C).*" (Pl.'s Reply Supp. Mot. Summ. J. 8.) Clause 10(C) addresses the Notes. If the Notes did not pertain to the Disputed Contracts, the express exception for the Notes in Clause 10(C) would be superfluous. Thus, based on the plain language of the Settlement, the Notes pertain to the "Disputed Contracts,"

and the Settlement releases all rights and claims relating to them, except as provided in Clause 10(C).

The provisions in Clause 10(C) further indicate that unlike Beloit, IK and TK did release their claims and waive all rights related to the Notes. First, Clause 10(C) expressly reaffirms IK's and TK's obligation to repay the Notes: "The APP Parties are not released from their obligations to pay or repay any promissory notes issued to [Beloit Corporation] or other financing or loans relating to the PPM3 and MPM11 Contracts." Second, Clause 10(C) recognizes that "the Beloit Entities' rights with respect to such promissory notes . . . are not effected [sic] by [the Settlement]." The parties notably did not include a similar provision to protect the rights of IK and TK with respect to the IK and TK Notes, supporting the conclusion that their rights *have* been affected by the Settlement. Consequently, this court concludes based on the undisputed material facts that the parties did not intend for the Settlement to exclude IK's and TK's claims and defenses arising from their respective Notes.

This court therefore finds that the Settlement, which was entered into by Beloit, IK, and TK, bars IK and TK's breach of implied warranty affirmative defenses as a matter of law.

b.    IK and TK's Third Affirmative Defense: Beloit Allegedly Made Fraudulent Misrepresentations with the Purpose of Inducing IK and TK to Enter into the Credit Agreements and Sign the Notes

IK and TK's third affirmative defense alleges that Beloit made two different fraudulent misrepresentations with the purpose of inducing IK and TK to enter into the Credit Agreements and sign the Notes: (1) Beloit misrepresented that it had the experience and skill necessary to design and build the PPM3 and MPM11 to the desired specifications, and (2) Beloit misrepresented that the Notes would be a temporary and interim measure, and that Beloit would secure financing elsewhere.

According to IK and TK, these fraudulent misrepresentations void the Notes. JPMorgan argues that this affirmative defense is also barred by the Settlement because it arises from Disputed Contracts. IK and TK contend, however, they could not have released this affirmative defense through the Settlement because they were unaware of the fraudulent misrepresentations at the time the Settlement was executed. (Defs.' Mem. Resp. Pl.'s Mot. Summ. J. 6.)

The court agrees with IK and TK that the Settlement cannot bar their fraudulent misrepresentation defense if they lacked knowledge of the misrepresentations before releasing their claims. *See Carlile v. Snap-On Tools*, 648 N.E.2d 317, 321 (Ill. App. Ct. 1995) ("A release cannot be construed to include claims not within the contemplation of the parties."). Yet, to prevail IK and TK must show that a genuine issue of material fact exists with regard to the defense requiring a trial. *See Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996).

Therefore, to defeat JPMorgan's summary judgment motion as to IK and TK's third affirmative defense, they must demonstrate a genuine issue of material fact with regard to each of the five elements of fraudulent misrepresentation: (1) Beloit made a false statement of material fact; (2) Beloit knew or believed that the statements were false, or the statements were made with a reckless disregard of whether they were true or false; (3) the statements were made with the intent to induce IK and TK to sign the Notes; (4) IK and TK reasonably believed the statements and justifiably acted in reliance on those statements; and (5) IK and TK suffered damages as a result. *See Kapelanski v. Johnson*, 390 F.2d 525, 530 (7th Cir. 2004) (applying Illinois law). The party asserting fraudulent misrepresentation must prove each element by clear and convincing evidence. *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 940 (7th Cir. 1997).

I.  Beloit's Alleged Misrepresentation Regarding Its Skill and Experience

IK and TK contend that the Declarations of Aarno Tuomenoja ("Tuomenoja"), a former APP employee, and Robert Prutzman ("Prutzman"), a former Beloit employee, raise a genuine issue of material fact as to whether Beloit made a false statement about its own experience and skill. According to Tuomenoja, Beloit misrepresented "that [it] had machineries, which were the best in the world, and had experience in supplying the machines, supervising the installation, and providing maintenance services."  (Tuomenoja Decl. ¶ 7, attached as Ex. B to Defs.' Mem. Resp. Pl.'s Mot. Summ. J.)  Because IK and TK only presented evidence challenging Beloit's alleged representation that it had experience in supplying the machines, this court will not address the remaining representations alleged in Tuomenoja's declaration.  To prove the falsity of this statement, IK and TK provided Prutzman's declaration which attests that "Beloit had never before designed or manufactured machines of the caliber, type and to the high level of specification as those machines that [IK and TK] contracted with Beloit to produce."  (Prutzman Decl. ¶ 4, attached as Ex. D to Defs.' Mem. Resp. Pl.'s Mot. Summ. J.)  This evidence, however, is not sufficient to defeat a summary judgment motion.  *Williams v. Nat'l Hous. Exch., Inc.*, 110 F. Supp. 2d 694, 698 (N.D. Ill. 2000) ("Summary judgment is a means for avoiding a trial when the best evidence the party opposing the motion can bring would not win the claims even if believed.").

As noted above, IK and TK will ultimately have to prove each element of fraudulent misrepresentation by clear and convincing evidence.  They cannot meet that burden where, as here, they have failed to present evidence that the alleged Beloit statements were false.  Assuming that Tuomenoja and Prutzman accurately described Beloit's representations and level of experience, their statements are not clearly contradictory, and thus are insufficient to prove that Beloit's

representation was false. Specifically, IK and TK have not presented evidence that Beloit expressly stated that it previously built machines exactly like the PPM3 and MPM11, and there similarly is no evidence that Beloit lacked experience in the general field of building paper machines. As a result, IK and TK cannot prove that Beloit's statement was false by clear and convincing evidence. *See LaScola v. U.S. Sprint Commc'ns,* 946 F.2d 559, 569 (7th Cir. 1991) (affirming summary judgment in part because the plaintiff failed to prove the accused statement was false by clear and convincing evidence).

In addition, IK and TK have not presented this court with any evidence that Beloit made this alleged misrepresentation with the intent to induce IK and TK to sign the Notes and the accompanying Credit Agreements. Instead, IK and TK solely rely on Tuomenoja's statements that (1) Beloit misrepresented its skill and experience when it attempted to sell the PPM3 and MPM11 machines to IK, TK, and APP in 1995, and (2) IK, TK, and APP relied on these misrepresentations in choosing Beloit over other vendors and signing the contracts for the construction of the PPM3 and MPM11 machines. (Tuomenoja Decl. ¶¶ 2, 3.) There is no evidence, however, that either party contemplated the subsequent issuance of Notes at the time the statements were made, nor can IK or TK rely on their own speculation or conjecture as to Beloit's motives in making the allegedly false representation to defeat JPMorgan's motion. *See Abioye v. Sunstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998). As a result, IK and TK have failed to present a genuine issue of material fact with respect to whether Beloit made the false statement with the intent to induce IK and TK to sign the Notes.

Because there is not a genuine issue of fact with regard to every element of fraudulent misrepresentation, the court finds that IK and TK's affirmative defense based on Beloit's alleged

misrepresentations of its own skill and experience fails as a matter of law. *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir. 1998) ("Once the moving party has met its burden, the opposing party must present specific facts in support of each element of the claim, demonstrating a genuine issue of material fact for trial.").

> ii. Beloit's Alleged Misrepresentation Regarding the Temporary/Interim Nature of the Promissory Notes and that Beloit Would Secure Financing Elsewhere

IK and TK's second theory of fraudulent misrepresentation is premised on IK and TK's alleged understanding that they were never supposed to repay their respective Notes. According to IK and TK, Beloit made two representations which are false in light of this understanding: (1) Beloit allegedly misrepresented that the Notes were temporary, and (2) Beloit allegedly misrepresented that it would secure financing elsewhere.

As stated above, to survive summary judgment IK and TK must demonstrate that their evidence, if believed, could satisfy their burden to prove each element by clear and convincing evidence. *LaScola,* 946 F.2d at 569. The court finds that IK and TK cannot meet this burden. IK and TK have not explained why a representation that the Notes were "interim" or "temporary" financing meant that the Notes were illusory and did not need to be repaid. *See Regensburger v. China Adoption Consultants*, 138 F.3d 1201, 1207 (7th Cir. 1998) (citations omitted) ("An illusory promise appears to be a promise, but on closer examination reveals that the promisor has not promised to do anything . . . an illusory promise is also defined as one in which the performance is optional."). "[I]t is not the court's responsibility to research the law and construct the parties' arguments for them." *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008). Moreover, IK and TK do not allege that Beloit (or anyone else) was to pay off these

Notes. Based on the evidence that IK and TK have presented, the court finds IK and TK cannot prove by clear and convincing evidence that the representation that the Notes were "interim" or "temporary" was false, and no genuine issue of material fact exists for a jury to decide. *LaScola,* 946 F.2d at 569.

Furthermore, IK and TK could not have reasonably relied on any such representations when they signed two unambiguous documents (the Credit Agreement and the Note) which expressly stated that the Notes were to be repaid in full. (IK Note and Guarantee 1 ("First (1) installment will be due September 20, 1999, and semi-annually thereafter *until paid in full*.") (emphasis added); TK Note and Guarantee 1 (same); *see Regensburger*, 138 F.3d at 1207 (finding that as a matter of law a party cannot reasonably rely on contradictory oral representations in the face of clear and unambiguous language in a written agreement).) As a result, the court finds that IK and TK's argument that Beloit fraudulently misrepresented that the Notes were temporary or interim fails as a matter of law.

IK and TK also argue that Beloit misrepresented that it would obtain financing elsewhere. This argument similarly fails. First, in general, Illinois does not recognize a claim for promissory fraud, *i.e.* "fraud based upon a false representation of intention or future conduct." *Indep. Trust Corp. v. Fidelity Nat'l Title Ins. Co. of New York*, 577 F. Supp. 2d 1023, 1038-39 (N.D. Ill. 2008) ("The general rule denies recovery for fraud based upon a false representation of intention or future conduct . . . Even a false promise of future conduct with no current intent to fulfill that promise will not constitute fraud."). Although courts do recognize a "scheme" exception to the general rule against promissory fraud claims, the Seventh Circuit has explained that promissory fraud "is actionable only if it either is particularly egregious or . . . it is embedded in a larger pattern of

deception or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *J.H. Desnick v. Am. Broad. Cos.,* 44 F.3d 1345, 1354 (7th Cir. 1995); *see also Speakers of Sport, Inc. v. ProServ, Inc.,* 178 F.3d 862, 866 (7th Cir. 1999) (stating that a scheme to defraud is "a pattern of fraudulent acts").  In this case, the court does not find any representations made by Beloit to be "egregious" nor have IK and TK provided any evidence of a pattern of deception.  As a result, IK and TK's affirmative defense based on promissory fraud must fail as a matter of law.

Moreover, even assuming Illinois recognized a claim for promissory fraud, IK and TK have failed to present sufficient evidence to sustain their affirmative defense.  First, there is no evidence that Beloit actually made a false statement or knew its statement to be false.  Nothing in the record suggests that Beloit did not intend to obtain additional financing except for Tuomenoja's allegation in his declaration that "Beloit had no intention of acting on its representation."  (Tuomenoja Decl. ¶ 16.)  Such conclusory assertions, however, are insufficient to defeat a motion for summary judgment.  *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 894 (7th Cir. 2003) ("[I]t is clear that conclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment.").

IK and TK also have provided no evidence that they relied on any representations by Beloit to their detriment.  To the contrary, IK and TK contracted for the purchase of the PPM3 and MPM11 machines and would eventually need to pay for them regardless of whether Beloit received financing from another source.  IK and TK have not alleged that they are paying more for the machines through their Notes than they would have through other forms of payment.  Additionally, IK and TK did not provide evidence of any detriment they suffered due to any problems with the machines that

would have been avoided if they had not signed the Notes.

Once again, even if Illinois law recognized a claim for promissory fraud, IK and TK's third affirmative defense would fail as a matter of law because they have not presented this court with a genuine issue of material fact with respect to each element of the prima facie case. *Lindemann*, 141 F.3d at 294.

        c.        IK and TK's Fifth Affirmative Defense:  The Notes are Allegedly Unenforceable Due to Their Issuance for a Special Purpose

IK and TK next claim that the Notes are illusory and unenforceable because they were allegedly issued for a special purpose: to induce JPMorgan to provide financing to Beloit, which Beloit could then use to manufacture the PPM3 and MPM11 machines.  According to IK and TK, because of this special purpose, the Notes were never intended to be repaid.

First, IK and TK again have failed to explain why this alleged "special purpose" of inducing JPMorgan to finance the machines' manufacture proves that they had no obligation to repay the Notes.  To the contrary, the evidence in the record overwhelmingly indicates that there was no "special purpose" excusing IK's and TK's repayment of the Notes.  The terms of the Notes and Credit Agreements clearly bind IK and TK to pay the Notes in full.  For example, both IK's and TK's Credit Agreements recognize that "[t]he Loan will partially finance [IK's and TK's] purchase of one fine paper machine [PPM3 or MPM11] from [Beloit]" and further state that "the terms and conditions hereof shall remain in full force and effect until all Loans have been *fully repaid*."  (IK Credit Agreement 2, 7; TK Credit Agreement 2, 7 (emphasis added).)  In addition, the IK and TK Notes specifically lay out the schedule for repayment of the Notes' principal: "First (1) installment will be due September 20, 1999, and semi-annually thereafter *until paid in full*." (IK Note and

Guarantee 1; TK Note and Guarantee 1 (emphasis added).) IK and TK also admit that they "made or caused to be made payments of interest and/or principal and interest on the IK Note in September 1998 and again in 1999 and 2000." (Defs.' Statement Material Facts ¶¶ 23, 44.) Even the Settlement, signed two years after the most recent Notes, references payment on the Notes. (Defs.' Mem. Resp. Pl.'s Mot. Summ. J. 5 ("The APP Parties are not released from their *obligations to pay or repay any promissory notes* . . . relating to the PPM3 and MPM11 contracts") (emphasis added).)

Second, the parol evidence rule bars IK and TK's attempt to introduce evidence of a special purpose outside of the four corners of the IK and TK Notes and their accompanying Credit Agreements. When a negotiable instrument is executed at the same time as another writing as part of the same transaction, the documents must be read together as a single agreement; under these circumstances, parol evidence is admissible for the sole purpose of establishing that the instruments were executed as part of the same transaction. *Basu v. Stelle*, 603 N.E.2d 1253, 1256 (Ill. App. Ct. 1992). Prior or collateral oral agreements are inadmissible to contradict the express terms of a fully integrated written instrument absent conditional delivery, ambiguity in the note, or a defense of fraud. *Main Bank v. Baker*, 410 N.E.2d 681, 686 (Ill. App. Ct. 1980), *rev'd on other grounds*, 86 Ill. 2d 188 (1981).

A contract is integrated when the parties intended the contract "to be a final and complete expression of the entire agreement." *IFC Credit Corp v. Burton Indus., Inc.,* 536 F.3d 610, 614 (7th Cir. 2008). In this case, the Credit Agreements contain a merger clause, which is strong evidence that the parties intended the Credit Agreements, along with the Notes, to be the complete and exclusive agreement of the parties. (IK Credit Agreement 7; TK Credit Agreement 7; *Regensburger v. China Adoption Consultants, Ltd*., 138 F.3d 1201, 1206 (7th Cir. 1997).)

Relying solely on Tuomenoja's declaration, IK and TK argue that the Notes were not fully integrated and, thus, parol evidence is admissible. According to Tuomenoja, "IK relied on Beloit's representation that Beloit would secure financing elsewhere and issued the promissory note . . . . The promissory note was meant to be a temporary measure." (Tuomenoja Decl. ¶ 17.) As discussed above, however, such a conclusory assertion is insufficient evidence to defeat summary judgment. *See Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 894 (7th 2003) ("[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment."). Additionally, adopting IK and TK's argument would eviscerate the parol evidence rule; if merely asserting that some other agreement or understanding existed independent of the written instrument allowed the court to consider parol evidence, the rule would be meaningless. Consequently, the court finds that the Notes and Credit Agreements, together, form a fully integrated document. As a result, evidence of any prior or collateral oral agreements is inadmissible to contradict the terms of the Notes and Credit Agreements. *Main Bank*, 410 N.E.2d at 686.

IK and TK also assert that parol evidence nevertheless is admissible to invalidate a contract under certain circumstances such as fraud. However, this court previously found that IK and TK could not sustain a defense of fraudulent misrepresentation and, therefore, it cannot admit parol evidence on the same basis.

Lastly, IK and TK's argument that the parties never intended for IK and TK to repay the Notes defies common sense. According to IK and TK, JPMorgan was involved in the financing discussions leading up to IK's and TK's execution of the Notes. (*See* Defs.' Mem. Resp. Pl.'s Mot. Summ. J. 18-19.) IK and TK have not attempted to explain why, if the Notes were never to be

repaid, JPMorgan would extend Beloit over $40 million worth of credit in exchange for the Notes. (*See* Defs.' Mem. Resp. Pl.'s Mot. Summ. J. 17 ("[T]his defendant has no evidence to refute whether the instruments were taken by JPMorgan for value."); Aff. Lisa Spano ¶¶ 5, 11, attached as Ex. 9 to Pl.'s Mem. Supp. Mot. Summ. J.)

Because IK and TK's assertion that the parties issued the Notes for a special purpose and never intended for IK and TK to repay them is not supported by either the facts or logic, this court finds that their fifth affirmative defense fails as a matter of law.

d.        IK and TK's Sixth Affirmative Defense: Lack of Consideration Supporting the Notes

IK and TK further argue that the Notes lack consideration and as a result are unenforceable. "Consideration" is "a bargained-for exchange, whereby the promisor . . . receives some benefit, or the promisee . . . suffers some detriment." *Vassilkovska v. Woodfield Nissan*, 830 N.E.2d 619, 624 (Ill. App. Ct. 2005).  A validly executed negotiable instrument is presumed to be supported by consideration. *Pedott v. Dorman*, 548 N.E.2d 541, 546 (Ill. App. Ct. 1989).  This presumption can only be rebutted by evidence of a "very clear and cogent nature." *Id.*  Moreover, a statement in the instrument that it was given "for value received" further supports the conclusion of valid consideration. *Id.*; *Stolzenbach v. Pagoria*, 390 N.E.2d 376, 378 (Ill. App. Ct. 1979).

Here, the IK and TK Notes not only are validly executed negotiable instruments but they also state that they were issued "for value received."  (IK Note and Guarantee 1; TK Note and Guarantee 1.)  Consequently, they are presumed to be supported by consideration.  Moreover, IK and TK admit that they issued the Notes to help Beloit get financing, which enabled Beloit to obtain the necessary capital to build IK's and TK's machines.

IK and TK rely on the Tuomenoja declaration and the Ferry Djongianto and Davit Boentoro ("Boentoro") depositions, to argue that they did not receive any benefit in exchange for the Notes and therefore the Notes are not supported by consideration. According to Tuomenoja, Beloit requested IK and TK to provide interim financing while Beloit obtained financing elsewhere. (Tuomenoja Decl. ¶ 16.) Djongianto, former legal counsel for IK and TK, testified that IK and TK executed two promissory notes to help Beloit get financing from JPMorgan; that IK, TK, and APP never received money or the advance of money in connection with the Notes; and that none of the parties intended the Notes and Credit Agreements to finance the purchase of the PPM3 and MPM11 machines. (Dep. Djongianto Nov. 17, 2007, 31:8-10, 53-54, 96-97, attached as Ex. C to Defs.' Mem. Resp. Pl.'s Mot. Summ. J.) Lastly, Boentoro, an IK employee, testified that construction of the paper making machines was delayed because of the financing problems. (Dep. Boentoro Nov. 14, 2007, 15:20-24, attached as Ex. I to Defs.' Mem. Resp. Pl.'s Mot. Summ. J.)

Although such parol evidence is admissible to show lack of consideration, *O'Brien v. Cacciatore*, 591 N.E.2d 1384, 1390 (Ill. App. Ct. 1992), these statements do not support IK and TK's affirmative defense. First, the Credit Agreements expressly state that the Notes are to partially finance the PPM3 and MPM11. (IK Credit Agreement 2; TK Credit Agreement 2.) The only evidence contradicting this language in the Notes is Djongianto's testimony that the parties did not intend the Notes and Credit Agreements to finance the purchase of the PPM3 or MPM11 machines. (Dep. Djongianto 31:8-10.) This assertion, however, is speculative and lacks foundation; consequently, the court will not consider it. *Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996) ("The evidence relied upon [in a motion for summary judgment] must be competent evidence of a type otherwise admissible at trial."). Thus, IK and TK have not provided any

admissible evidence contradicting the Credit Agreements' explicit recognition that the Notes were to *partially* finance the purchase of the PPM3 and MPM11.

Second, Boentoro's assertion that construction of the machines was delayed due to problems with financing actually supports rather than refutes the Notes' presumption of consideration. To prevent additional delays in the machines' construction, IK and TK executed the Notes to help Beloit secure financing from JPMorgan. IK and TK therefore reaped a benefit from the issuance of the Notes.

As a result, the court finds that the Notes were supported with good and valuable consideration, and IK and TK's sixth affirmative defense must fail as a matter of law.

> e.  IK and TK's Seventh Affirmative Defense: JPMorgan Is Not a Holder-In-Due-Course

IK and TK's last affirmative defense, that JPMorgan is not a holder-in-due-course, is not a true affirmative defense because it is not an independent bar to JPMorgan's recovery. Instead, whether a plaintiff is a holder-in-due-course is only relevant if a defendant has presented an affirmative defense that survives summary judgment. *Bank of N.C., N.A. v. Rock Island Bank*, 630 F.2d 1243, 1246 (7th Cir. 1980). In this case, JPMorgan's alleged lack of holder-in-due-course status does not affect its right to recover because IK and TK cannot prevail on any of their affirmative defenses. The seventh affirmative defense, therefore, fails as a matter of law.

As a result of the foregoing analysis, this court concludes that IK and TK do not have any viable affirmative defenses. Consequently, JPMorgan is entitled to judgment as a matter of law on its breach of contract claim against IK and TK.

## CONCLUSION

For the reasons set forth above, this court grants summary judgment in favor of the plaintiff, JPMorgan. The court has not considered damages at this time. JPMorgan's "Motion and Memorandum of Law in Support of Summary Judgment Against Asia Pulp and Paper" [218] remains under advisement, and the court strongly encourages all parties to discuss settlement. This case is set for further status on October 29, 2009 at 9:00 A.M.

ENTER:

_James F. Holderman_

_____

JAMES F. HOLDERMAN
Chief Judge

Date: October 14, 2009