IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, N.A., successor in interest to the First National Bank of Chicago, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 02 C 6240 |
| PT INDAH KIAT PULP AND PAPER CORPORATION Tbk, a corporation duly Organized under the laws of the Republic of Indonesia; PT PABRIK KERTAS TJIWI KIMIA Tbk, a corporation duly organized under the laws of the Republic of Indonesia; and ASIA PULP AND PAPER COMPANY, LTD., a corporation duly organized under the laws of Singapore, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff JPMorgan Chase Bank, N.A., successor in interest to the First National Bank of Chicago (collectively "JPMorgan"),[1] alleges in its First Amended Complaint that defendants PT Indah Kiat Pulp and Paper Corporation, Tbk ("IK"), PT Pabrick Kertas Tjiwi Kimia, Tbk ("TK"), and Asia Pulp and Paper Company, Ltd. ("APP") (collectively "Defendants") are liable to JPMorgan for breaching the terms and conditions of certain promissory notes and guarantees. (Dkt. No. 12 ("1st Am. Compl.").) Each defendant has asserted several affirmative defenses in their answers to these claims, and APP has alleged a counterclaim under the Uniform

---

[1] JPMorgan is also the successor in interest to the original plaintiff in this case, Bank One, N.A. For the sake of simplicity, these entities are referred to as JPMorgan throughout.

1

Commercial Code ("U.C.C.") based on a breach of implied warranty. This court has subject-matter jurisdiction over the claims at issue in this case pursuant to 28 U.S.C. § 1332(a)(2).

On October 14, 2009, this court issued an order granting JPMorgan's Motion for Summary Judgment Against IK and TK in part, finding them liable for breach of contract. (Dkt. No. 258.) The court reserved the issue of damages. Now pending before the court is JPMorgan's "Motion and Memorandum of Law in Support of Summary Judgment Against Asia Pulp and Paper," (Dkt. No. 218 ("JPMorgan's Summary Judgment Motion")) as well as the issue of damages as to all three defendants: APP, IK, and TK. For the reasons set forth below, this court grants summary judgment in favor of JPMorgan.

## BACKGROUND

When ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmovant's favor. *Omega Healthcare Investors, Inc. v. Res-Care, Inc.*, 475 F.3d 853, 857 (7th Cir. 2007). In light of this principle, the following are the facts of this case, construed in the light most favorable to APP.

In 1996, APP and Beloit Corporation ("Beloit") entered into two contracts for APP's purchase of two paper-making machines known as the PPM3 and the MPM11. Subsequently in 1997, IK and TK assumed all of APP's rights and obligations pursuant to Clause 12 of the PPM3 and MPM11 contracts. Specifically, IK purchased the PPM3 machine and TK purchased the MPM11 machine. To facilitate Beloit's financing of the construction of these machines, on April 25, 1998 both IK and TK executed promissory notes in favor of Beloit. The original IK promissory note was in the amount of $21,809,962.00 and the original TK promissory note was

2

in the amount of $16,213,352.00. The same day those promissory notes were executed, April 25, 1998, Beloit and JPMorgan entered into a Note Purchase Agreement whereby Beloit sold to JPMorgan all of its rights, title and interest in the two notes. In addition, Beloit executed and delivered to JPMorgan a Form of Notice and Endorsement, dated April 29, 1998, which assigned and transferred Beloit's rights, title and interest in the two notes to JPMorgan.

On September 24, 1998, IK and TK executed and delivered to Beloit new promissory notes which replaced and superseded the original notes in the principal amount of $26,701,678.00 ("IK Note") and $17,123,488.95 ("TK Note"). (JPMorgan's Summ. J. Mot., Exs. 12, 20.)[2] The Credit Agreement related to each respective note was amended to reflect the higher amounts. (*Id.* at Exs. 11, 19.)

Also on September 24, 1998, APP executed guarantees on both the IK Note and the TK Note (respectively "IK Guarantee" and "TK Guarantee") and delivered them to Beloit, unconditionally guaranteeing payment of all obligations of IK and TK arising under either note.

On September 30, 1998, Beloit and JPMorgan amended the Note Purchase Agreement to reflect the increased balance of both the IK and TK promissory notes. That same day, September 30, 1998, Beloit executed and delivered to JPMorgan a new Form of Notice and Endorsement which assigned and transferred all of Beloit's rights, title and interest in the IK and TK Notes to JPMorgan.

On October 3, 2000, IK, TK, APP, Beloit, Beloit Asia Pacific (L), Inc. ("BAPL"), Beloit Asia Pacific PTE, Ltd. ("BAP"), and Harnischfeger Industries, Inc. ("Harnischfeger"), entered into a Deed of Settlement ("Settlement") in order to settle disputes, claims, controversies, and

---

[2] The guarantees executed by APP are attached to the IK and TK Notes; together they form one document.

other matters in conflict involving certain "Disputed Contracts," including the PPM3 and MPM11 contracts. (JPMorgan's Summ. J. Mot. 8.) The Settlement specifically released Beloit, BAP, BAPL, and Harnischfeger and its successors from all claims relating to the sale, installation, or operation of the PPM3 and MPM11 machines. The Settlement also recognized that IK, TK, and APP were not released from their obligations to repay the IK and TK Notes.

IK and TK made or caused to be made payments of interest and principal to JPMorgan on their respective Notes in 1998, 1999, 2000. IK and TK have not made any further payments since October of 2000. APP has also failed to make payments on the IK and TK Notes.

On September 14, 2001, JPMorgan sent notice to APP informing it that, based on its failure to make a payment on the Notes, it was in default under the terms of the IK and TK Guarantees as of April 2, 2001. Pursuant to an acceleration clause in the IK and TK Notes, JPMorgan declared all unpaid principal and accrued interest immediately to be due and payable. As no further payments have been made on either promissory note, JPMorgan filed this action on August 30, 2002 to collect monies allegedly owed on the IK and TK Notes based on APP's status as a guarantor.

PROCEDURAL BACKGROUND

This court previously found IK and TK liable to JPMorgan for breach of contract in an order dated October 14, 2009. (Dkt. No. 258 at 23.) At that time, the court encouraged the parties to discuss settlement and reserved its ruling on JPMorgan's Motion for Summary Judgment Against APP and JPMorgan's damages. Defendants requested further briefing on the issue of damages, which the court allowed. Subsequently, Defendants filed their "Memorandum of Law in Response to Plaintiff's Motion for Summary Judgment on Damages" (Dkt. No. 261

("Defendants' Damages Memorandum")),[3] which JPMorgan responded to in its "Memorandum of Law Supporting Its Requests for Damages in Its Motions for Summary Judgment Against Asia Pulp and Paper, Indah Kiat and Tjiwi Kimia" (Dkt. No. 263 ("JPMorgan's Damages Memorandum")).

## LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmovants's favor. *Omega Healthcare*, 475 F.3d at 857. However, "[o]nce a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAmerica*, *L.L.C.*, 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)).

In ruling on a motion for summary judgment, the court does not make credibility determinations or weigh conflicting evidence. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Instead, it only determines whether a genuine issue of material fact exists for

---

[3] JPMorgan did not file a separate motion for summary judgment on damages. Rather, they argued for damages in their original summary judgment motions against Defendants. (Dkt. Nos. 218, 220.) Defendants declined to address the issue of damages in their respective responses to these summary judgment motions. (Dkt. No. 233 ("APP's Resp. Summ. J") at 24-25; Dkt. No. 234 ("IK/TK's Resp. Summ. J.") at 22-23.)

trial, or in other words, whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The evidence relied upon must be competent evidence of a type that is admissible at trial. *Id.*

ANALYSIS

**A.     APP's Liability for Breach of Contract**

APP, the guarantor of the IK and TK Notes, raised the same affirmative defenses to liability for breach of contract that were raised by IK and TK and rejected by this court in its previous order including breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, fraudulent misrepresentation, unenforceability of the notes due to their issuance for a special purpose, and that JPMorgan is not a holder-in-due-course. APP has restated the same arguments previously raised by IK and TK and has not identified any facts or law distinguishing its position from that of IK and TK. The court, therefore, finds that these affirmative defenses similarly fail as they relate to APP for the reasons stated in this court's October 14, 2009 order. (Dkt. No. 258.)

In that order, this court also addressed an additional affirmative defense based on an alleged lack of consideration for the IK and TK Notes as that defense related to IK and TK. APP has raised the same lack of consideration affirmative defense, repeating verbatim the arguments made by IK and TK, which this court previously rejected. By merely reasserting IK and TK's arguments, APP has not distinguished its interests in the underlying transaction from those of IK and TK and, consequently, has failed to explain why the court's reasoning in its prior order does

6

not apply to APP as well. Accordingly, APP's lack of consideration affirmative defense is also rejected for the same reasons explained in the court's October 14, 2009 order. (Dkt. No. 258.)

APP, therefore, has no viable affirmative defenses and is liable to JPMorgan for its breach of contract.

**B.     APP's Counterclaim Against JPMorgan**

APP additionally has raised a counterclaim against JPMorgan, alleging that Beloit breached an implied warranty which entitles IK and TK to consequential damages pursuant to § 2-715 of the U.C.C. JPMorgan argues that this counterclaim is barred by the Settlement and that APP does not have standing to assert the claim.

APP, on the other hand, contends that the Settlement cannot bar its counterclaim because at the time the parties executed the settlement "none of the defendants were aware of Beloit's misrepresentations, thus, defendants could not have been aware of Beloit's breach of implied warranty, the subject of APP's counterclaim." (APP's Resp. Summ. J. 23.) APP goes on to state that Defendants were "unaware of Beloit's material misrepresentations regarding its skills and regarding the PPM3 and MPM11 negotiations and resulting contracts." (*Id.* at 24.) APP, however, does not identify any additional misrepresentations not previously identified in connection with APP's (and IK and TK's) affirmative defense for breach of implied warranty, which this court addressed above and discussed more thoroughly in its October 14, 2009 order and found insufficient to survive JPMorgan's motion for summary judgment for breach of contract. Merely recharacterizing an affirmative defense for breach of implied warranty as a counterclaim does not alter the court's analysis with respect to this evidence. Again, the court

finds that APP's proffered evidence of Beloit's alleged misrepresentations does not create a genuine issue of material fact to defeat summary judgment.

Moreover, even assuming Beloit did make false representations to Defendants at the time of the negotiations for the purchase of the PPM3 and MPM11, APP has not demonstrated how these alleged misrepresentations prevented APP from discovering the breach of implied warranty before signing the Settlement. IK and TK received the machines and constructed them approximately three years after the alleged misrepresentations were made by Beloit (APP's Resp. Summ. J. 23, Ex. B ¶¶ 2-5) and approximately two years before the Settlement was signed on October 3, 2000 (APP's Resp. Summ. J., Ex. L at 5, Ex. M at 21). APP's own Statement of Material Facts claims that "[a]fter receiving the machines, field level employees of defendants reported that the machines would not run at the speeds required in the contract. This caused production issues and ultimately caused the defendants to incur problems with their customers." (Dkt. No. 233-2 ("APP's. Stmt. Facts") at 21 ¶ 7.) Furthermore, an employee of IK who managed the PPM3 (APP's Resp. Summ. J., Ex. M at 14) "became aware of the full extent of the above problems with the PPM3 machine in mid-October 1998 when a complete test of the PPM3 machine was performed" (APP's Stmt. Facts. 22). Similarly, an employee of TK stated that the MPM11 ran at its guaranteed speed only one time for a period of five to six hours since the machine began running in May of 1998. (APP's Resp. Summ. J., Ex. L at 20.) These statements indicate that Defendants were aware of the problems with the machines, which underlie APP's counterclaim for breach of implied warranty, well before they signed the Settlement on October 3, 2000. Because APP has not offered any evidence from which the court can reasonably infer that Beloit's alleged misrepresentations prevented APP from discovering its breach of implied

8

warranty claim prior to executing the Settlement, this court finds that APP's counterclaim is barred by the Settlement.

Based on the court's determination that the Settlement bars APP's counterclaim, the court need not address JPMorgan's additional argument that APP lacks standing to assert this counterclaim. As a result, for the reasons set forth above and discussed more thoroughly in this court's previous October 14, 2009 order, APP's counterclaim is deficient as a matter of law.

**C.      Damages**

This court will now consider the issue of damages with respect to all three defendants: APP, IK, and TK. JPMorgan contends that it is entitled to $30,552,692.49 in principal and interest due on the IK Note and Guarantee and $20,194,019.54 in principal and interest due on the TK Note and Guarantee (JPMorgan's Summ. J. Mot. 24), and further seeks $461,851.17 in attorneys' fees and collection costs, bringing JPMorgan's total damages request to $51,208,563.20 (*id.* at 25).

Defendants jointly raise three arguments against a judgment of $51,208,563.20 in favor of JPMorgan: (1) the increased interest rate applied after Defendants defaulted constitutes an unenforceable penalty clause, (2) the amount of damages should be mitigated by Beloit's alleged fraud, and (3) the request for attorneys' fees and collection costs should be denied because the contract between the parties did not expressly provide for such damages. (Defs.' Damages Mem. 2.) The court finds Defendants' arguments lack merit for the reasons expressed below.

1.       Increased Interest Rate

Defendants' first argument relates to the increased interest rate that went into effect upon default of payment. The Credit Agreements for the IK and TK Notes each contain a provision

indicating that the interest rate on the notes would increase by slightly less than one percent in the event of default. (Dkt. No. 220 ("JPMorgan's Summ. J. Mot. Against IK/TK") at Exs. 13, 23.) Defendants contend that this provision constitutes an unenforceable penalty clause because its purpose is to secure performance of the contract. (Defs.' Damages Mem. 5.) To the contrary, in Illinois, contractual provisions mandating an increased interest rate upon default are considered enforceable liquidated damages provisions, not unenforceable penalties. *Baker v. Loves Park Savings & Loan Assoc.*, 333 N.E.2d 1, 5-6 (Ill. 1975). The court, therefore, bases its damages calculation on the increased default interest rate provided in the Credit Agreements.

2. Alleged Fraudulent Misrepresentations

Defendants also argue that damages must be mitigated due to Beloit's alleged misrepresentations and fraud. Notably, Defendants have not cited any authority supporting the proposition that evidence of fraud may mitigate damages after a finding of liability, and this court is aware of none. Having previously considered and rejected Defendants' evidence of Beloit's purported fraud in determining that Defendants are liable for breach of contract, the court declines to revisit the issue.

Consequently, the court finds that APP is liable to JPMorgan for the $30,522,692.49 in principal and interest due on the IK Note and Guarantee and $20,194,019.54 in principal and interest due on the TK Note and Guarantee.

3. Attorneys' Fees

Defendants further argue that under Illinois common law, attorneys' fees are not a recoverable element of damages for breach of contract in the absence of an express contractual provision to the contrary. They point to an Illinois appellate court case, *Qazi v. Ismail*, 364

indicating that the interest rate on the notes would increase by slightly less than one percent in the event of default. (Dkt. No. 220 ("JPMorgan's Summ. J. Mot. Against IK/TK") at Exs. 13, 23.) Defendants contend that this provision constitutes an unenforceable penalty clause because its purpose is to secure performance of the contract. (Defs.' Damages Mem. 5.) To the contrary, in Illinois, contractual provisions mandating an increased interest rate upon default are considered enforceable liquidated damages provisions, not unenforceable penalties. *Baker v. Loves Park Savings & Loan Assoc.*, 333 N.E.2d 1, 5-6 (Ill. 1975). The court, therefore, bases its damages calculation on the increased default interest rate provided in the Credit Agreements.

2. Alleged Fraudulent Misrepresentations

Defendants also argue that damages must be mitigated due to Beloit's alleged misrepresentations and fraud. Notably, Defendants have not cited any authority supporting the proposition that evidence of fraud may mitigate damages after a finding of liability, and this court is aware of none. Having previously considered and rejected Defendants' evidence of Beloit's purported fraud in determining that Defendants are liable for breach of contract, the court declines to revisit the issue.

Consequently, the court finds that APP is liable to JPMorgan for the $30,522,692.49 in principal and interest due on the IK Note and Guarantee and $20,194,019.54 in principal and interest due on the TK Note and Guarantee.

3. Attorneys' Fees

Defendants further argue that under Illinois common law, attorneys' fees are not a recoverable element of damages for breach of contract in the absence of an express contractual provision to the contrary. They point to an Illinois appellate court case, *Qazi v. Ismail*, 364

N.E.2d 595 (Ill. App. Ct. 1977), which held that damages for attorneys' fees are not recoverable without a statutory or contractual provision using "specific language such as listing 'attorney's fees.'" *Id.* at 597. According to Defendants, the contracts at issue do not expressly provide for recovery of attorneys' fees. The court disagrees. Section 8.1 of the Credit Agreements unambiguously states:

> The Borrower [IK and TK] agrees to pay and save the Lender [Beloit] harmless against liability for the payment of reasonable out of pocket expenses arising in connection with the . . . enforcement of this Agreement, the Note(s) and any documents or transactions contemplated hereby, as well as . . . *the fees and disbursements of counsel to the Lender*.

(JPMorgan's Damages Mem. 3-4; Defs.' Damages Mem. 4 (emphasis added).) While Defendants quote this provision in their brief, they fail to explain how the phrase "fees and disbursements of counsel to the Lender" does not equate to an authorization of damages for attorneys' fees. The agreement may not use the exact words "attorneys' fees," but section 8.1 does provide specific language indicating that attorneys' fees are recoverable, which is all that *Qazi* requires. Therefore, based on the express terms of the Credit Agreements, JPMorgan is entitled to recover its attorneys' fees from Defendants.

Pursuant to section 8.1 of the Credit Agreements, attorneys' fees and costs are recoverable as long as (1) they "aris[e] in connection with the . . . enforcement of this Agreement, the Note(s) and any documents or transactions contemplated hereby;" and (2) they are "reasonable." Although Defendants have not disputed that JPMorgan's claimed attorneys' fees arose in connection with the enforcement of the Agreement or Notes, they have requested that this court reopen discovery to determine the reasonableness of JPMorgan's attorneys' fees and costs. As discussed below, the court finds that additional discovery is not necessary.

The requirements of proof of reasonableness of attorneys' fees are procedural matters governed by federal law. *Taco Bell Corp. v. Cont'l Casualty Co.*, 388 F.3d 1069, 1076 (7th Cir. 2004). The Seventh Circuit has held that attorneys' fees awarded pursuant to a contract are reasonable if they are "commercially reasonable." *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520-21 (7th Cir. 1999). In other words, fees are to be awarded at market value, and "the best evidence of the market value of legal services is what people pay for it." *Balcor Real Estate Holding, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996). APP has not identified any evidence that JPMorgan's requested attorneys' fees and costs are unreasonable, and based on this court's review of JPMorgan's submitted affidavits and billing records it has no reason to believe the costs and fees are unreasonable. Before it can render its final determination, however, the court requests that JPMorgan provide additional documentation regarding the amount of attorneys' fees it has actually paid.

Specifically, the court needs documentation regarding the amount actually paid by JPMorgan, in U.S. Dollars, to the law firm Chadbourne & Parke. The majority of bills JPMorgan has provided from this law firm are in Pounds Sterling. (*See* JPMorgan's Summ. J. Mot., Ex. 28). Based on the Affidavit of John H.P. Barlow, an attorney from Chadbourne & Parke, JPMorgan appears to have calculated its requested attorneys' fees using the U.S. Dollar to Pounds Silver conversion rate effective on the date the Affidavit was written. (*See id.* at 3). However, the relevant conversion rate(s) would be the rate on the date(s) JPMorgan paid Chadbourne & Parke's bills. This court, therefore, requests documentation of the U.S. Dollar amount JPMorgan actually paid on each bill provided in JPMorgan's Summary Judgment Motion Exhibit 28.

Additionally, the court's calculations of the total sum paid to the Rock Fusco and Crowley & Lamb law firms, based on the amounts listed in the Affidavit of James M.Crowley, are $3,000 less than the total sum provided in the Affidavit. The court requests further clarification from JPMorgan on how the sum of $385,606.02, identified in the Affidavit of James M. Crowley, was reached. (*See* JPMorgan's Summ. J. Mot., Ex. 27 at 5.)

The court finds that the further documentation requested above will aid the court in determining the reasonableness of JPMorgan's claimed attorneys' fees, but the court does not believe that additional discovery is necessary on this matter. Although the Defendants have had access to the affidavits and invoices of JPMorgan's attorneys for over one year, they have not explained why JPMorgan's claimed fees are potentially unreasonable. Furthermore, Defendants have not identified what additional discovery they would seek. Defendants' request that discovery be reopened to determine the reasonableness of JPMorgan's requested attorneys' fees is therefore denied.

## CONCLUSION

For the reasons set forth above, this court grants summary judgment in favor of the plaintiff, JPMorgan, and awards damages in the amount of $50,746,712.03. The court reserves judgment on the remaining requested $461,851.17 for attorneys' fees and collection costs pending the submission of the further documentation requested in this opinion by May 5, 2010.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge

Date: April 21, 2010