**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JP MORGAN CHASE BANK, N.A.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) No. 02 C 6240 |
| | ) |
| **PT INDAH KIAT PULP AND PAPER** | ) **Judge James F. Holderman** |
| **CORPORATION Tbk, a corporation duly** | ) |
| **organized under the laws of the Republic of** | ) **Magistrate Judge Geraldine Soat Brown** |
| **Indonesia; PT PABRIK KERTAS TJIWI** | ) |
| **KIMIA Tbk, a corporation duly organized** | ) |
| **under the laws of the Republic of Indonesia;** | ) |
| **and ASIA PULP AND PAPER COMPANY,** | ) |
| **LTD., a corporation duly organized under** | ) |
| **the laws of Singapore,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM OPINION AND ORDER**

Geraldine Soat Brown, United States Magistrate Judge

This matter comes before the court on the motion by defendants Asia Pulp and Paper Company, Ltd. ("Asia Pulp"), PT Indah Kiat Pulp and Paper Corporation Tbk ("PT Indah"), and PT Pabrik Kertas Tjiwi Kimia Tbk ("PT Pabrik") (collectively, "defendants") to stay enforcement of citations to discover assets that plaintiff JP Morgan Chase Bank, NA ("JP Morgan") directed to them. [Dkt 330][1] Defendants assert that an injunction entered by an Indonesian court temporarily prohibits them from complying with the citations. (*Id*.) After weighing the relevant considerations,

---

[1] JP Morgan is the successor in interest to the original plaintiff in this case, Bank One, N.A.

1

the court concludes that it need not and should not stay its own proceedings. Therefore, the motion to stay is denied, and defendants are ordered to comply with the citations.

## **Background**

This case is currently in the post-judgment collection phase. Summary judgment was previously granted against all defendants, and the District Judge entered judgment on September 13, 2010, awarding damages to JP Morgan in an amount of $32,156,331.55 against PT Indah, $21,340,006.22 against PT Pabrik, as well as the total $53,496,337.77 against Asia Pulp as a guarantor. (Orders, Oct. 14, 2009, Apr. 21, 2010, Sept. 13, 2010) [Dkt 257, 265, 296]; (Judm.)[Dkt 297.][2]

On October 19, 2010, JP Morgan issued citations to discover assets to all defendants. (Defs.' Mot., Ex. C.)[3] The citations require defendants to produce all financial records regarding their assets, including but not limited to the following: bank account records for the past 12 months, accounts receivable records, payroll records, income tax returns, transfers of assets to third parties, and financial statements. (*Id.*) The citations further require corporate representatives of the defendants to appear for citation examinations. (*Id.*) Defendants seek to stay enforcement of the citations pursuant to a "Provisional Injunction" entered by an Indonesian court, which, they assert, prevents them from responding to the citations in this case until that injunction is lifted. (Defs.' Mot.

---

[2]Apparently an appeal is pending, (*see* Appeal Notice [dkt 298]), but defendants did not file a bond to stay enforcement of the judgment.

[3] The time for defendants to respond to the citations was extended to January 18, 2011. (Order, Nov. 16, 2010.) [Dkt 323.] On January 19, defendants brought the present motion. [Dkt 330.]

at 2-3.)  The District Judge referred defendants' motion to this court. [Dkt 361.][4]

The Provisional Injunction was entered by the District Court of Siak Sri Indrapura on June 12, 2008 in case number 02/Pdt.G/2008/PN-SIAK (the "Indonesian case").  (Defs.' Mot., Ex. A-1, Prov. Inj. at 1, 59-60.)[5]  That case, filed on April 4, 2008 by PT Indah Lestari ("Lestari"), alleges breach of a "Coal Sale and Purchase Agreement" by a number of companies (the "Indonesian Defendants").  Two of the Indonesian Defendants (Asia Pulp and PT Indah) are also defendants in this case.  (*Id.* at 1-3, 5-6.)  PT Pabrik is not a named defendant in the Indonesian case.  (*See id.* at 1-3.)  Lestari sought a total of $5,131,525 in "Material Damage" in the Indonesian case, including $2,130,000 against PT Indah specifically, as well as $10,000,000 in "Immaterial Damage."  (*Id.* at 7-8.) Lestari further sought to hold Asia Pulp jointly and severally liable as a guarantor for all payments owed Lestari by the Indonesian Defendants.  (*Id.* at 9.)

While the Indonesian case was pending, Lestari petitioned the Indonesian court to bar the Indonesian Defendants from providing information about their assets to third parties.  On June 12, 2008, the Indonesian court granted the motion and entered the Provisional Injunction, finding Lestari's request was reasonable in order to "protect interests of the Plaintiff, so that after the assets of the Defendants can be located, the Plaintiff may proceed with its petition for placing of security attachment over those assets, and . . . so as to avoid any transfer of the assets to third party[.]" (Prov.

---

[4]  JP Morgan asks the court to treat defendants' motion to stay as one for a preliminary injunction under Federal Rule of Civil Procedure 65. (Pl.'s Resp. at 8-9.) [Dkt 369.]  However, the District Judge did not view the motion as seeking a preliminary injunction, and this court will not do so either.

[5]  Defendants have provided English-language versions of the Provisional Injunction, as well as other documents issued by the Indonesian District Court, from "Sworn Translator" Sutan Amri Agus Arifin, S.H.  JP Morgan does not dispute the accuracy of the translations.

Inj. at 50-53, 55, 59.). The Provisional Injunction required the Indonesian Defendants to "provide statements and information on the assets of the Defendants and those owned by all subsidiaries of the Defendants to the Plaintiff [Lestari.]" (*Id*. at 59, ¶ 2.) The Indonesian Defendants were further ordered to

> abstain from providing statements and information on the assets of the Defendants and those owned by all subsidiaries of the Defendants to any party *temporarily during the examination process of this case*, except in respect of those required by the prevailing laws and regulations of the Republic Indonesia and or as permitted/ordered/requested by the authorized agencies in the Republic of Indonesia[.]

(*Id*. at 59, ¶ 3 (emphasis added).) Lestari also requested that monetary sanctions of $100,000 a day be imposed on the Indonesian Defendants if they failed to comply with the Provisional Injunction, but the court did not order any such sanction. (*See id.* at 11, 58-60.)

A little over a year after issuing the Provisional Injunction, the Indonesian court rendered a "Verdict of the Civil Case" on September 29, 2009, finding in favor of Lestari in a total amount of $5,131,525, ordering PT Indah to pay $2,130,000 of that amount, and ordering Asia Pulp, as guarantor, to "pay all indemnities" in the event the other Indonesian Defendants failed to do so. (Pl.'s Resp., Ex. 2-24, Verdict at 91-93.) [Dkt 369.][6] The Verdict appears to refer to the Provisional Injunction in two places. First, in the section entitled "Regarding Legal Considerations," the Verdict states, "Panel of Judges has pronounced a Provisional decision dated June 12 (the twelfth), 2008 (year two thousand and eight), Panel of Judges shall uphold the said Provisional Decision in the Final Verdict accordingly." Second, in the section entitled "To Judge," the court states: "Upholding

---

[6] Defendants did not provide the Verdict with their motion, but JP Morgan attached it to its response and represented the Verdict was provided by defendants along with a number of other documents related to the Indonesian case.

4

the Provisional Decision in its entirety[.]" (Verdict at 63, 91.)  The court expressly declined to order a $100,000 a day penalty for noncompliance with the Verdict.  (*Id.* at 83-84.)  Defendants represent that the case is now on appeal before the High Court of Pekanbaru, but no decision has yet been rendered.  (Defs.' Reply at 3, 6.) [Dkt 370.]  No documents relating to the appeal were attached to defendants' motion.

Defendants further represent that they have repeatedly applied to the Indonesian District Court and the High Court of Pekanbaru for permission to provide information about their assets to United States creditors.  (Defs.' Mot. at 3; Defs.' Reply at 6.)  Defendants did not provide documentation to support that assertion, but, at the request of the court, JP Morgan attached the materials it had received from defendants about the Indonesian case, along with English language translations.  (Pl.'s Resp., Group Ex. 2.)  Those materials include copies of letters from Indonesian counsel for PT Indah and other Indonesian Defendants to the Chief Judge of Siak Sri Indrapura District Court dated October 8, 2008 and May 20, 2009, requesting permission to provide statements and information about their assets and those of their subsidiaries to creditors in the United States. (Pl.'s Resp., Exs. 2-19, 2-22.)  There is no indication whether that request was addressed by the Indonesian District Court.  There are also letters dated April 29 and October 21, 2010, from counsel for PT Indah and other Indonesian Defendants requesting permission from the Pekanbaru High Court to provide information about their assets to creditors in the United  States while the appeal of the Indonesian case was pending.  (Pl.'s Resp., Exs. 2-25, 2-26.)  On November 8, 2010, that court said:

> Whereas there is [sic] no laws whatsoever that may be used by the Panel of Judges to deviate or avoid the provisional judgment of the Siak District Court of which, at present, is under examination process. Hence, we advise [sic] to wait until the case in question is settled by the Panel of Judges in the near future.

(Pl.'s Resp., Ex. 2-29 at 2.)  Defendants view that as a denial.  There has been no update from defendants on the status of the Indonesian case.

Defendants submitted "a legal opinion on the issues of Indonesian law" in the form of a declaration from Otto Hasibuan, an Indonesian attorney retained by Asia Pulp. (Defs.' Mot., Ex. B, Decl. Otto Hasibuan ¶¶ 1, 2.)[7]  Mr. Hasibuan is a licensed attorney in Indonesia and has been practicing law there for over twenty years.  (*Id.* ¶ 1.)  Mr. Hasibuan opines that, as of the date of his declaration (December 20, 2010), the Provisional Injunction remained in "full force and effect" and will remain in effect until the conclusion of the appeals process.  (*Id.* ¶¶ 8, 9.)  He states it is not unusual in the Indonesian court system for appeals to last longer than six months, and not unusual for such injunctions to remain in place for more than two years.  (*Id.* ¶¶ 9, 13.)  The purpose, he states, is to allow the plaintiff in the Indonesian case, Lestari, to identify assets over which  it could obtain a security attachment to satisfy a judgment and to avoid transfer of such assets to others.  (*Id.* ¶¶ 6, 12.)  The injunction is only temporary; after the assets are identified and attached, such a provision injunction will be vacated.  (*Id.* ¶ 13.)  To date, however, Lestari has not attached any assets of the Indonesian Defendants.  (*Id.*)

Mr. Hasibuan does not include citations or excerpts from any sources of Indonesian law in support of his opinions.  He opines that the Provisional Injunction prohibits defendants from providing any of the information JP Morgan seeks in its citations to discover assets, and that defendants would be exposed to "substantial monetary fines" if they do disclose any such documents, information, or testimony.  (*Id.* ¶¶ 17, 18.)  He did not, however, cite any support for that conclusion,

---

[7]  *See* Fed. R. Civ. P. 44.1: "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."

nor does his opinion discuss or refer to the fact that the Indonesian court expressly rejected Lestari's request that the Provisional Injunction specify monetary sanctions for its violation. Likewise, Mr. Hasibuan opines that the Provisional Injunction prohibits not only defendants but also their subsidiaries from providing information about their assets. (*Id.* ¶ 11.) Again, Mr. Hasibuan does not cite any support for that opinion, either by reference to any Indonesian law or by citation to the Provisional Injunction. The Provisional Injunction is not expressly directed to any entities except the Indonesian Defendants.

Mr. Hasibuan submitted a similar affidavit on behalf of Asia Pulp, PT Indah, and other defendants in an objection to post-judgment collection proceedings in the Southern District of New York. *See Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd*, Case No. 03 C 8554, 2009 WL 1055673 at *1 (S.D.N.Y. Apr. 17, 2009). The "Provisional Injunction" described by Mr. Hasibuan in that case is apparently the same Provisional Injunction at issue here – entered on June 12, 2008 in the Indonesian court case brought by Indah Lestari. *Id.* The district court in that case ruled in favor of the plaintiff and ordered the defendants, including Asia Pulp and PT Indah, to respond to interrogatories about their business relationships and transactions between the defendants and intermediary companies. *Id.* at *1 n.4, 4. Mr. Hasibuan opined in that case, as he has here, that providing the information sought would expose the defendants to "substantial mont[etary] fines." *Id.* at *1. Notably, defendants submitted nothing to this court to show that they suffered any adverse consequences – let alone substantial monetary fines – from the order entered by the New York court in April 2009, more than a year and a half before Mr. Hasibuan's affidavit here.

### Discussion

Whether the court should stay the citation proceedings in this case requires analysis of two questions. First, the court must determine whether Indonesian law actually conflicts with the court's enforcement of the judgment in this case, that is, whether, in fact, there is a substantial risk to defendants if they comply with the citations. *See U.S. v. First Natl. Bank of Chicago*, 699 F.2d 341, 343 (7th Cir. 1983)*; Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 541-42 (N.D. Ill. 2004). Second, if a conflict does exist, the court must determine whether principles of international comity warrant staying the collection proceedings here pending the outcome of the Indonesian case. *See id.*

### I.      Defendants have not proved that there is an actual conflict.

A.      PT Pabrik

The parties dispute whether the Provisional Injunction applies to defendant PT Pabrik. PT Pabrik was not named in the Indonesian case, but defendants submit the declaration of Ferry Siswojo Djongianto, the "Director of the Corporate and Legal Affairs Division of the Asia Pulp and Paper Group of companies[,]" who states that PT Pabrik is a subsidiary of PT Purinusa Ekapersada, one of the Indonesian Defendants. (Defs.' Mot., Ex. A, Decl. Ferry Siswojo Djongianto ¶¶ 1, 3.)

Defendants have not established that the Provisional Injunction prohibits PT Pabrik from complying with the citations. The Provisional Injunction by its terms prohibits only the Indonesian Defendants from supplying information *about* the assets of their subsidiaries; it is not directed *to* those subsidiaries. (*See* Prov. Inj. at 59, ¶ 3 ("order[ing] the Defendants to abstain from providing statements and information on the assets of the Defendants and those owned by all subsidiaries of the Defendants. . . .").) Neither Mr. Djongianto nor Mr. Husibuan cite authority from which the

8

court could conclude that the Provisional Injunction extends beyond its terms to restrict the actions of an entity that is not a party to the Indonesian case.

B.     <u>Effect of the Provisional Injunction</u>

The parties further disagree about both the meaning of the Provisional Injunction and whether it remains in effect today. Defendants argue that they continue to be bound by its terms and will be subject to monetary sanctions if they do not comply. (Defs.' Mot. at 3-4.) JP Morgan argues that the Provisional Injunction was temporary and expired by its terms when the Indonesian court rendered its Verdict, and that there is no proof that defendants will be fined for noncompliance. (Pl.'s Resp. at 3-4, 6-7.)

Defendants bear the burden of establishing that the Indonesian court's Injunction actually bars the production of the information sought here. *See First Natl. Bank*, 699 F.2d at 343; *Dexia Credit*, 231 F.R.D. at 541. To meet that burden, defendants must "provide the [c]ourt with information of sufficient particularity and specificity to allow the [c]ourt to determine whether the [production] sought is indeed prohibited by foreign law." *Dexia Credit*, 231 F.R.D. at 541 (internal citation omitted).

The present status of the Provisional Injunction is not certain, although it apparently had not expired as of the last information provided by defendants. While the Injunction states that it was to be in effect "temporarily" during the "examination process of this case," (Prov. Inj. at 59, ¶ 3), the Indonesian court appeared to uphold it in its Verdict of a Civil Case. (Verdict at 91.) A year ago, the Indonesian appeals court "advise[d] [sic] to wait until the case in question is settled by the Panel of Judges *in the near future*." (*See* Pl.'s Resp., Ex. 2-29 at 2 (emphasis added).)

JP Morgan is correct, however, that defendants have not pointed to any specific provision or evidence that they would be subject to monetary fines or other sanctions for complying with the citations. Instead, defendants rely on the declaration of Mr. Hasibuan, who opines that the Injunction is still in effect and exposes them to substantial fines if they produce the information about their assets required in the citations. (Hasibuan Decl. ¶¶ 8, 9, 17, 18.) Mr. Djongianto also states that it is his "understanding" that if the Indonesian Defendants "act in a manner contrary to the Provisional Injunction . . . they will be exposed to punishment by the Indonesian court." (Djongianto Decl. ¶ 9.) Those declarations, however, are not persuasive, for several reasons. First, neither declarant provides any citations or sources to legal authority to support his opinions. In particular, Mr. Hasibuan's assertion that defendants will be subject to monetary sanctions if they turn over information about their assets to JP Morgan is not only unsupported, it is contrary to the fact that the Indonesian court rejected Lestari's request that the Injunction provide for such a fine. Mr. Djongianto likewise fails to specify what "punishment" he believes defendants will face or the basis for his belief.

Moreover, Mr. Hasibuan was retained by Asia Pulp and his opinion therefore cannot be considered with the weight of an independent legal source. *See Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 629 (7th Cir. 2010) ("Trying to establish foreign law through experts' declarations . . . adds an adversary's spin, which the court then must discount.").

Additionally, despite the fact that their appeal in the Indonesian court has been pending for more than a year, defendants did not submit any updated information on the status of the appeal.

In sum, the court is not persuaded that the Provisional Injunction prohibits PT Pabrik from supplying information required by JP Morgan's citations or that the other defendants will face any

10

significant sanctions for providing such information, particularly given the passage of time since the "temporary" Provisional Injunction was issued.

## II.     Comity principles do not require a stay.

Even assuming, *arguendo*, that the Provisional Injunction conflicts with American law by restraining defendants from complying with the citations, that fact alone would not automatically require a stay of the citations here.  *See First Natl*, 699 F.2d at 345.  Generally, a United States court is not bound by the rulings of foreign courts.  *U.S. v. Kashamu*, 656 F.3d 679, 683 (7th Cir. 2011). In any case presenting a conflict between the requirements of United States law and prohibitions imposed by the law of another country, however, the court will consider principles of international comity.  Comity refers to "the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states."  *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct.*, 482 U.S. 522, 543-44 n. 27 (1987).  Comity concerns require an analysis of the competing interests in the particular case.  *See Reinsurance Co. of Amer., Inc. v. Administratia Asigurarilor de Stat*, 920 F.2d 1275, 1280 (7th Cir. 1990).

In determining whether to order disclosure of documents despite a potential conflict with foreign law, the Seventh Circuit applies a balancing drawn from Restatement of the Foreign Relations Law of the United States.  The court should consider: (1) the importance to the litigation of the information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States or compliance with the request would undermine important interests of the country

11

where the information is located. *Reinsurance Co.*, 920 F.2d at 1281-82 (citing *Restatement (Third) of Foreign Relations Law of the United States* § 442(1)(c) (1987)); *see also Société Nationale*, 482 U.S. at 544 n. 28 (noting that the concerns guiding a comity analysis are suggested in the Restatement's list of factors (citing *Restatement of Foreign Relations Law of the United States* § 437 (7th tent. dft. 1986), now § 442 of Restatement (Third))).

Application of these factors to the present case leads to the conclusion that the citation proceedings need not be stayed. The citations are specific as to the information JP Morgan seeks. (*See* Defs.' Mot., Ex. C.) That information is critical to the litigation at this point because JP Morgan is impeded in essentially all efforts to collect its substantial judgment from defendants without information about their assets. Defendants have not suggested an alternative means of securing the information, which apparently resides with defendants in Indonesia. Importantly, defendants have not established any specific penalty to which they would be subject were they to disclose the information.

Most critically, the interests of this court in enforcing its judgment must be balanced against the Indonesian court's interest in continuing to enforce its injunction. The Injunction by its terms was "Provisional." It was to be temporary while the case was pending. The Injunction was entered over three years ago and the Verdict over two years ago. The stated goal of the Injunction was to allow "the Plaintiff [to] proceed with its petition for placing of security attachment over those assets, and . . . so as to avoid any transfer of the assets to third party[.]" (Prov. Inj. at 55.) Lestari, the plaintiff in the Indonesian case, has had ample opportunity to receive information about defendants' assets similar to that sought by JP Morgan. Two years ago, the court in the *Export-Import* case concluded that Lestari had had "significant time" to achieve the effect of the Provisional Injunction.

12

*Export-Import*, 2009 WL 1055673 at *3.  Since then, Lestari has had a even more time to identify and place a security attachment over assets to protect its judgment. The Provisional Injunction has served its stated purpose.

The case against defendants in this court has been adjudicated, and the court has a significant interest in enforcing that judgment.  JP Morgan has obtained a judgment totaling $54.5 million in this case, ten times the Verdict of $5.3 million in the Indonesian case.  The court cannot allow enforcement of the judgment in this case to be impeded indefinitely. While defendants represent they are only temporarily restrained by the Indonesian court's Injunction, it was issued over three years ago, and defendants give no specific information about an expected end date, nor did they update the court about the progress of the Indonesian appeal.  Considering all of the relevant factors, principles of comity do not dictate that this court should stay enforcement of its judgment.

## Conclusion

For the foregoing reasons, defendants' motion to stay enforcement of plaintiff JP Morgan Chase Bank, NA's citations to discover assets directed at defendants is denied.  Defendants are ordered to comply with the citations within fourteen days of this order.

**IT IS SO ORDERED.**

_Geraldine Soat Brown_
GERALDINE SOAT BROWN
United States Magistrate Judge

DATED: November 16, 2011

13