UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JP MORGAN CHASE BANK, N.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 02 C 6240 |
| | ) |
| PT INDAH KIAT PULP AND PAPER CORPORATION Tbk, a corporation duly organized under the laws of the Republic of Indonesia; PT PABRIK KERTAS TJIWI KIMIA Tbk, a corporation duly organized under the laws of the Republic of Indonesia; and ASIA PULP AND PAPER COMPANY, LTD., a corporation duly organized under the laws of Singapore, | ) Judge James F. Holderman<br>)<br>) Magistrate Judge Geraldine Soat Brown<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

In an effort to collect the judgment entered in its favor in this case, plaintiff JP Morgan Chase Bank, N.A. ("JP Morgan") served a citation to discover assets upon the law firm Cassiday Schade LLP ("Cassiday") whose attorneys have represented the defendants in this case.[1] Currently before the court is Cassiday's Motion to Quash Citations to Discover Assets. [Dkt 358.] In the challenged citations, JP Morgan seeks information about the retainer defendants paid to Cassiday as well as

---

[1] David C. Van Dyke, one of the attorneys for the defendants in this case, has recently relocated from Cassiday to Howard & Howard. [Dkt 376.] However, other attorneys associated with Cassiday (including Mark A. Schaeve and Trisha K. Tesmer) remain of record in this case.

other records about defendants' assets. Cassiday asserts that its retainer agreement with defendants is privileged, that the retainer belongs to Cassiday and not defendants, and that the citation requests are overly broad and unduly burdensome. As discussed further herein, the documents JP Morgan seeks are not privileged and JP Morgan is entitled to discover them in citation proceedings, and to that extent Cassiday's motion is denied. However, some of the citation requests are not properly directed to a third party, and to that extent Cassiday's motion is also granted in part as described below.

## Background

This case is currently in the post-judgment collection phase. Summary judgment was previously granted against all defendants, and the District Judge entered judgment on September 13, 2010, awarding damages to JP Morgan in an amount of $32,156,331.55 against PT Indah Kiat Pulp and Paper Corporation, $21,340,006.22 against PT Pabrik Kertas Tjiwi Kimia, as well as the total $53,496,337.77 against Asia Pulp and Paper Company as a guarantor. (Orders, Oct. 14, 2009, Apr. 21, 2010, Sept. 13, 2010) [dkt 257, 265, 296]; (Judgm.) [dkt 297].)

As part of its ongoing efforts to collect the judgment against defendants, JP Morgan issued third-party citations to discover assets to Cassiday. [Dkt 357.] In those citations, JP Morgan seeks two categories of financial records: (1) information related to the retainer and other amounts defendants paid to Cassiday, including any retainer agreements, records of trust accounts Cassiday maintains for defendants, and payment records from defendants to Cassiday (requests 1 through 5); and (2) records Cassiday possesses pertaining to accounts, assets, and interests that defendants

themselves hold (requests 6 through 14). (Pl.'s Resp., Ex. A.) [Dkt 365.][2] The second category of requested documents is essentially the same documentation JP Morgan sought from defendants themselves in citations to discover assets directed to defendants. (*See* Defs.' Mot. to Stay, Ex. C.) [Dkt 330.] Defendants previously sought a stay on those citations, arguing that a 2008 Indonesian court order barred them from providing the requested information, but this court issued an order on November 16, 2011 denying that motion and ordering defendants to comply fully with the citations. (Order, Nov. 16, 2011.) [Dkt 377.] Defendants' motion to amend or alter that order (essentially, a motion for reconsideration) has likewise been denied. (Order, Dec. 19, 2011.) [Dkt 386.]

Before the court denied defendants' motion to stay, Cassiday brought the present motion to quash the citations directed to the firm. The District Judge referred defendants' motion to this court. [Dkt 361.] In accordance with this court's order, Cassiday thereafter provided a privilege log and

---

[2] Specifically, the citations request: 1) retainer agreements between Cassiday and defendants; 2) bank statements for all trust accounts held by Cassiday for defendants; 3) copies of all checks, certified funds, and/or wire transfers to Cassiday from any defendant's account; 4) copies of all checks, certified funds, and/or wire transfers paid to third parties drawn on any defendant's account in possession of Cassiday; 5) any and all documents evidencing funds paid by defendants to Cassiday for the use of Cassiday, defendants, or third parties; 6) all of defendants' bank account records for the past 12 months; 7) copies of all records relating to any checking, savings, or other accounts maintained by defendants at any financial institution for the last 3 years; 8) copies of all contracts or agreements that call for payments to be made to defendants; 9) copies of financial statements filed by or on behalf of defendants in the past 3 years; 10) copies of all account statements relating to stock or commodities brokerage accounts in which defendants have had an interest in the past 3 years; 11) copies of all documents and records pertaining to defendants' cash on hand for the past 3 years; 12) copies of documents pertaining to funds/assets belonging to defendants held in any escrow account in the past 3 years; 13) copies of all by-laws, articles of incorporation, resolutions and general ledgers of defendants and any and all corporations in which any defendant has a controlling interest; and 14) copies of any UCC filings, assignments of beneficial interest, mortgages, or other security interests ever assigned by a defendant to any other party. (Pl.'s Resp., Ex. A.)

copies of its retainer agreements with defendants for *in camera* examination. [*See* dkt 371.][3]

**Discussion**

**I.      Information about the retainer and other amounts paid by defendants to Cassiday.**

    A    <u>The question of whether the retainer is subject to turnover is not before the court on the present motion.</u>

As a initial matter, Cassiday asserts that any monies it is holding as a retainer belong to it and not defendants and cannot be reached to satisfy the judgment against defendants. Therefore, according to Cassiday, the retainer is not the proper subject of a citation to discover assets. (Cassiday Mot. at 2-4.) However, Cassiday's argument is premature. Whether the retainer belongs to Cassiday or defendants will depend on the structure of the retainer agreement. *See Dowling v. Chicago Options Assocs., Inc.*, 875 N.E.2d 1012 (Ill. 2007). At this stage, JP Morgan is only seeking documents related to the retainer, not the turnover of any funds. JP Morgan has not yet had the opportunity to review the relevant documents and determine whether it will seek a turnover order for the retainer. *See* 735 ILCS 5/2-1402(c). The court agrees that JP Morgan need not "take Cassiday's word" that the retainer is the property of Cassiday. (Pl.'s Resp. at 4.) Without having seen the retainer agreements, JP Morgan cannot respond to Cassiday's argument that the retainer belongs to the firm. If and when JP Morgan seeks a turnover order, the issue will be properly raised at that time, along with Cassiday's argument that it has a priority interest in any funds remaining in the retainer. (*See* Cassiday Mot. at 2-4.)

---

[3] The court has since ordered the privilege log filed on the docket. [*See* dkt 387.]

B.   The documents relating to the retainer and payments to Cassiday are not privileged or work-product protected.

The first two entries on Cassiday's privilege log list the retainer agreements between Cassiday and Asia Pulp and Paper Ltd. ("Asia Pulp") dated respectively October 15, 2002 and February 1, 2005. The agreements are virtually identical except for the billing rates and some additional terms in the second agreement. Cassiday claims that the agreements are attorney-client privileged and reflect "[s]ensitive, [c]onfidential and [p]roprietary [b]usiness [i]nformation." (Priv. Log.) [Dkt 387.] Cassiday's privilege log contains two other entries for categories of documents: "copies of any and all checks, certified funds, and/or wire transfers," and "any and all other documents evidencing funds paid to Cassiday Schade LLP drawn on a PT Indah account for the use of Cassiday Schade LLP, [defendants] APP, IK or TK." (*Id.*) As to both categories, Cassiday asserts attorney-client privilege and work product protection. (*Id.*)

Cassiday's assertion of attorney-client privilege is governed by Illinois law because supplementary proceedings to enforce the judgment are undertaken pursuant to state law procedures. *See* Fed. R. Civ. P. 69(a); Fed. R. Evid. 501. It is a "well-recognized" concept in Illinois that information about fee payments from client to attorney are incidental to the attorney-client relationship and not subject to the privilege. *People ex rel. Ulrich v. Stukel*, 689 N.E.2d 319, 327 (Ill. App. 1st Dist. 1998) (quoting *Matter of Grand Jury Proc., Cherney*, 898 F.2d 565, 567 (7th Cir. 1990)). This rationale logically extends to retainer agreements between attorneys and their clients. *See Stopka v. Am. Family Mut. Ins. Co., Inc.* __ F. Supp. 2d __, 2011 WL 3839735 at *11 (N.D. Ill. Aug. 30, 2011). Generally speaking, Illinois construes the privilege narrowly and favors disclosure of relevant information. *Waste Mgt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 327 (Ill.

1991). Thus, retainer agreements or payment records are not privileged unless they reveal confidential communications such as legal advice or the nature of the work performed for the client. *See Ulrich*, 689 N.E.2d at 327; *Cherney*, 898 F.2d at 567.

*In camera* review of the retainer agreements between Cassiday and Asia Pulp reveals that that they contain no communication of legal advice. They contain only standard terms of the fee arrangement – billable rates, expense charges, payment schedule, and the set up of the retainer; no legal advice was provided. Cassiday has not supported the assertion of privilege for those documents.[4] While Cassiday has not submitted the other documents relating to its payment arrangements for *in camera* inspection, the nature of the documents sought (records of trust accounts Cassiday maintains for defendants, and payment records from defendants to Cassiday) do not suggest any communication of legal advice in those documents either, nor has Cassiday argued that they contain any.

Since the documents submitted do not reflect any legal advice, Cassiday's argument is, in essence, that defendants expect their retainer agreement and information about payments to Cassiday to be kept confidential because defendants are restricted by the 2008 Indonesian injunction from disclosing information about their assets. (Cassiday Mot at 4-6; Cassiday Reply at 2-3.) [Dkt 366.] A client's expectation of confidentiality, however, is not sufficient by itself to establish attorney-client privilege from disclosure. Furthermore, Cassiday cites no authority suggesting that Cassiday is precluded by the Indonesian order from disclosing information about money that defendants transmitted into Cassiday's hands. Finally, Cassiday's argument is moot in light of this court's order

---

[4] The retainer agreements Cassiday submitted pertain only to Asia Pulp and did not mention the other two defendants.

on November 16, 2011, concluding that the Indonesian injunction does not bar defendants from providing JP Morgan with information about its accounts and other assets. Defendants' expectation of confidentiality arising from the Indonesian injunction is no longer germane.

As for Cassiday's assertion of work-product protection, Cassiday has cited no specific reason why records of funds transfers would be considered attorney work product. Unlike the attorney-client privilege, the claim of work-product protection is governed by federal law. *See* Fed. R. Civ. P. 26(b)(3). The doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) ." Fed. R. Civ. P. 26(b)(3)(A). It exists to prevent disclosure of "mental impressions, conclusions, opinions, or legal theories of a party's attorney ..." Fed. R. Civ. P. 26(b)(3)(B). Cassiday has not explained how the retainer agreements or financial records JP Morgan requests can be considered materials that in any way reflect the impressions, conclusions, opinions, or legal theories of any of its attorneys. Nor do the retainer agreements Cassiday submitted show any such characteristics.

The cases Cassiday cites lend no further support to the assertion of privilege and work-product protection in this context. (*See* Cassiday Mot. at 5.) Two of them are cited simply for the general proposition that communications by a client for the purpose of seeking legal advice will be protected by attorney/client privilege, a point which is not in dispute here. *See Ill. Emcasco Ins. Co. v. Nationwide Mut. Ins. Co.*, 913 N.E.2d 1102, 1105 (Ill. App. 1st Dist. 2009); *Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 963 (N.D. Ill. 2010). The other two cases Cassiday cites for support

7

that defendants' payment records are privileged do not in fact address the issue in any way.[5] Neither case involved retainer agreements or records of payments from a client to its attorney.

Cassiday's motion to quash is denied as to requests 1 through 5 of the citations, relating to the retainer agreements and records regarding payments from defendants to Cassiday, including but not limited to any records relating to any funds held by Cassiday on behalf of defendants in a trust account or other wise.

## II. Information about defendants' assets other than payments to the law firm.

Cassiday argues that JP Morgan seeks a large amount of information about defendants' assets that it cannot reach through a third-party citation, and also that the citation requests are unduly broad in scope and do not specify a time period. (Cassiday Mot. at 6-7; Cassiday Reply at 4.)

Pursuant to the Illinois supplementary proceeding statute, JP Morgan may initiate proceedings to discover the assets of a judgment debtor or third party, and apply those assets to satisfy the judgment. 735 Ill. Comp. Stat. 5/2-1402(a). JP Morgan may only institute proceedings against a third party that it "believes has property of or is indebted to the judgment debtor." Ill. S. Ct. R. 277(a). The relevant inquiry in a supplementary proceeding against a third party is "whether [the] third party is holding assets of the judgment debtor that should be applied to satisfy the judgment." *Schak v. Blom*, 777 N.E.2d 635, 639 (Ill. App. 1st Dist. 2002). Generally speaking, the

---

[5] In *Hayes v. Burlington N. & Santa Fe Ry. Co.*, 752 N.E.2d 470, 474-75 (Ill. App. 1st Dist. 2001), the court held that a case summary drafted by a corporate client with the intent of obtaining legal advice from outside counsel was subject to the privilege. In *Specht v. Google, Inc.*, 268 F.R.D. 596, 600-601 (N.D. Ill. 2010), the court held that the plaintiff's attorney's refusal to answer certain deposition questions based on attorney-client privilege was improper to the extent they related to the factual basis underlying the complaint and a document review not conducted for the purpose of providing legal advice.

supplementary proceeding statute is liberally construed to allow the judgment creditor to discover assets belonging to the judgment debtor. *See id.*

JP Morgan is entitled to use the citation proceedings to obtain the first category of documents in the citations directed to Cassiday (requests 1-5). Those requests would elicit information about the structure of the retainer(s) defendants paid to Cassiday, trust accounts Cassiday holds containing defendants' funds (although Cassiday claims there are none), and payment records from defendants to Cassiday. That information could potentially lead JP Morgan to funds in the hands of Cassiday that may belong to defendants.

However, with respect to the second category of information (requests 6-14), the requests do not appear designed to elicit information about assets Cassiday itself holds or maintains. Rather, the requests seek documents Cassiday might have in its possession related to defendants' assets such as bank accounts and financial statements. Those requests are beyond the scope of what the supplementary proceeding statute allows a judgment creditor to obtain from a third party. JP Morgan appears to acknowledge as much in its response, as it only references the first five document requests in the citations. (Pl.'s Resp. at 6.) In any event, Cassiday asserted in its citation responses that it did not have any of the information referenced in requests 6-14. (Cassiday Reply, Exs. A-C.) Accordingly, the motion to quash is granted as to requests 6-14.

**III. Cassiday's request for costs to respond to the citations is denied**.

Cassiday argues that, if it is required to respond to the citations, JP Morgan should bear the costs. However, Cassiday has cited no authority for such an order, and accordingly, Cassiday's request for its costs is denied.

9

**Conclusion**

For the foregoing reasons, Cassiday Schade's motion is granted in part and denied in part as set forth in this opinion. Cassiday is ordered to comply with the citations as set out in this opinion within fourteen days of this order.

**IT IS SO ORDERED.**

_____
GERALDINE SOAT BROWN
United States Magistrate Judge

DATED: December 22, 2011