IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JPMORGAN CHASE BANK, N.A.,      )
successor in interest to the First National Bank    )
of Chicago,      )
      )
Plaintiff,      )
      )
v.      )    No. 02 C 6240
      )
PT INDAH KIAT PULP AND PAPER    )
CORPORATION Tbk, a corporation duly    )
organized under the laws of the Republic of    )
Indonesia; PT PABRIK KERTAS TJIWI KIMIA    )
Tbk, a corporation duly organized under the laws   )
of the Republic of Indonesia; and ASIA PULP   )
AND PAPER COMPANY, LTD., a corporation   )
duly organized under the laws of Singapore,   )
      )
Defendants.      )

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On September 13, 2010, this court entered judgment in favor of JPMorgan Chase Bank

("JPMorgan") against Asia Pulp and Paper Company, Ltd., in the amount of $53.5 million, against

PT Indah Kiat Pulp and Paper Corporation Tbk in the amount of $32.2 million, and against PT

Pabrik Kertas Tjiwi Kimia Tbk in the amount of $21.3 million. (Dkt. No. 297.) On October 19,

2010, JPMorgan issued citations to discover the assets of the defendants for the purpose of enforcing

the judgment. (Dkt. Nos. 302, 303.) The defendants moved to stay enforcement of the citations on

the ground that an injunction issued against them by an Indonesian court (the "Indonesian

Injunction") prohibited compliance. (Dkt. No. 330.) The motion to stay was referred to the assigned

magistrate judge, Judge Geraldine Soat Brown. (Dkt. No. 361.) On November 16, 2011, Judge

Brown denied the motion to stay and ordered the defendants to comply with the citations within fourteen days. (Dkt. No. 377.) On December 19, 2011, Judge Brown denied the defendants' motion to reconsider her November 16, 2011 ruling. (Dkt. No. 386.)

On January 3, 2012, the defendants filed objections to Judge Brown's ruling under Fed. R. Civ. P. 72(a). (Dkt. No. 391.) This court set a briefing schedule on January 10, 2012. (Dkt. No. 393.) Eight days later, the defendants filed a notice of appeal to the United States Court of Appeals for the Seventh Circuit stating that they were appealing Judge Brown's denial of the motion to stay. (Dkt. No. 394.) The Seventh Circuit requested a jurisdictional memorandum from the defendants "stating why this appeal should not be dismissed for lack of jurisdiction." Order, *J.P. Morgan Chase Bank v. Asia Pulp & Paper Co., Ltd.*, No. 12-1136 (7th Cir. Jan. 26, 2012). The defendants' appeal remains pending in the Seventh Circuit, which has not yet addressed whether or not it has jurisdiction to entertain defendants' appeal.

On February 1, 2012, JPMorgan filed a "Motion to Compel Defendants' Compliance with Party Citations and for Sanctions" (Dkt. No. 403), seeking enforcement of the citations. JPMorgan's motion to compel and the objections to Judge Brown's orders are both currently pending before this court. For the reasons stated below, the objections to Judge Brown's orders (Dkt. No. 391) are overruled, and JPMorgan's motion to compel (Dkt. No. 403) is granted. The court declines to impose sanctions for the past conduct of the defendants, but will impose a sanction of $5,000 per day for each day after April 20, 2012, and $10,000 for each day after May 20, 2012, that the defendants have not complied with the citations.

## BACKGROUND

The Indonesian Injunction arises out of an action brought in an Indonesian court by Indah Lestari against the defendants. (Dkt. No. 330, Ex. A ¶ 4.)[1] Indah Lestari alleged that the defendants defaulted on a purchase agreement for the sale of coal, and sought to prevent the defendants from avoiding a potential judgment by moving for an injunction to prohibit the defendants from revealing information about their assets to third parties. (*Id.*) The Indonesian court granted the injunction, which orders:

> the Defendants to abstain from providing statements and information on the assets of the Defendants and those owned by all subsidiaries of the Defendants to any party temporarily during the examination process of this case, except in respect of those required by the prevailing laws and regulations of the Republic of Indonesia and or as permitted/ordered/requested by the authorized agencies in the Republic of Indonesia.

(*Id.* ¶ 7.) A little over a year later, the Indonesian court found in favor of Indah Lestari and entered judgment against the defendants. (Dkt. No. 369, Ex. 2-24.) The Indonesian court stated that the judgment "shall uphold the said Provisional Decision [issuing the Indonesian Injunction] in the Final Verdict accordingly" (*Id.* at 63) and that it is "[u]pholding the Provisional Decision in its entirety" (*Id.* at 91). The defendants' represent that the case is on appeal in Indonesia, but the appellate court has not yet rendered a decision. (Dkt. No. 370, at 3, 6.)

The defendants have applied to Indonesian courts for permission to comply with the citations. (Dkt. No. 369, Exs. 2-19, 2-22, 2-25, 2-26.) On October 21, 2010, the Indonesian appellate court replied by stating that there are "no laws whatsoever that may be used by the Panel of Judges

---

[1] One of the defendants, Pabrik Kertas Tjiwi Kimia Tbk, was not a party to the suit out of which the Indonesian Injunction arose, but is a subsidiary of PT Purinusa Ekapersada, who was a party to the Indonesian proceedings. (Dkt. No. 330, Ex. A ¶ 3.)

to deviate or avoid the provisional judgment . . . which, at present, is under examination process. Hence, we advise to wait until the case in question is settled by the Panel of Judges in the near future." (Dkt. No. 369, Ex. 2-29.)

<u>ANALYSIS</u>

Before ruling on the defendants' objections or on JPMorgan's motion to compel, this court must determine whether it has jurisdiction to proceed in light of the appeal of Judge Brown's orders that remains pending in the Seventh Circuit.

I.      This Court's Jurisdiction

Typically, "[t]he filing of a timely notice of appeal confers jurisdiction over the matter on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1240 (7th Cir. 1986). That "rule does not operate, however, where there is a purported appeal from a non-appealable order." *United States v. Bastanipour*, 697 F.2d 170, 173 (7th Cir. 1982); *see also* 20 George C. Pratt, *Moore's Federal Practice* § 303.32[2][b][iv][B] (3d ed. rev. 2012) [hereinafter *Moore's*] ("If an appeal is taken from a non-appealable order the district court may proceed with the case as if the notice of appeal had not been filed."). The power of district courts to proceed in such circumstances is widely accepted and based on the sound principle that "preventing district courts from proceeding when an appeal is taken from a non-appealable order would enable a party to interrupt the progress of the proceedings at will, and delay all proceedings until the appeal is dismissed or the circuit court remands the case." *Moore's* § 303.32[2][b][iv][B] (citing cases from the Second, Third, Fifth, Sixth, Seventh, Ninth, and Tenth Circuits). That concern is particularly acute here, where the court is concerned that the defendants may be improperly delaying compliance with the citations in an effort

-4-

to thwart JPMorgan's attempts to collect on the judgment. This court will therefore consider whether Magistrate Judge Brown's orders were appealable to the Seventh Circuit.

Moving to that inquiry, it is plain that Judge Brown's orders are nonfinal and thus non-appealable. Under 28 U.S.C. § 1291, an appellate court may review a district court's final decisions. When evaluating finality, the court must "treat each postjudgment proceeding like a freestanding lawsuit and look for the final decision in that proceeding to determine the scope of" appellate review. *Solis v. Current Dev. Corp.*, 557 F.3d 772, 775 (7th Cir. 2009). Applying that rule, the Seventh Circuit held in *Central States, Southeast and Southwest Areas Pension Fund v. Express Freight Lines* that orders granting postjudgment discovery are nonfinal. 971 F.2d 5, at 6 (7th Cir. 1992). The defendants point out that the Seventh Circuit subsequently hedged that ruling in dicta by stating that

> [w]e may have written too broadly when we said in *Central States* . . . that a discovery order issued in a supplemental proceeding is nonfinal, as of course it would be in an ordinary proceeding. Often the sole object of such a proceeding is discovery of the judgment debtor's assets, since once they are discovered the judgment creditor may levy on them without obtaining a further court order. Ill. Rev. Stat. ch. 110, ¶ 2-1501.

*Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1225 (7th Cir. 1993). There are at least three reasons why *Resolution Trust*'s possible exception to the general rule does not apply here.

First, the comments in *Resolution Trust* were merely an aside that had little to do with the case's holding—that the imposition of a resulting trust in postjudgment proceedings is appealable. *Id.* at 1225. The comments are thus dicta, and not binding law.

Second, even assuming *Resolution Trust*'s exception is binding, a motion to stay a citation proceeding does not fall within it. The exception applies only when the order appealed from resolves all aspects of the postjudgment proceeding without need for a further court order. The citation

-5-

proceeding here—which must be conducted according to Illinois law, *see* Fed. R. Civ. P. 69(a)(1)—by contrast, will require additional court orders following discovery of the defendants' assets. Under Illinois law, the mere issuance of a citation results in the attachment of a judgment lien to the judgment debtor's property. 735 ILCS 5/2-1402(m). The attachment of a lien, however, does not usually terminate the proceedings. One treatise explains that after discovery of the judgment debtor's assets,

> [a]pplication can be made to the court for the transfer of discovered non-exempt assets from the person cited to the judgment creditor in satisfaction of the judgment. The court can also enter any order that could be entered in garnishment proceedings, e.g., against an employer, 735 ILCS 5/2-1402(c)(4), and can turn assets over to the sheriff for sale.

12 Muller Davis & Jody Meyer Yazici, *Illinois Practice Series: Family Law Practice* Rule 277 (2011); *see also* 735 ILCS 5/2-1402(c). One would assume that most judgment debtors would follow this procedure, because there is no reason to institute separate proceedings to enforce a lien when one can merely petition the court that is already hearing the case for a transfer of assets. Almost all citation proceedings will therefore involve additional court orders following discovery. Accordingly, the denial of the defendants' motion to stay the citation proceeding likely will not be this court's last order in the postjudgment proceeding, and is therefore not final.

Third, and most significantly, the Seventh Circuit has subsequently held that an order allowing postjudgment discovery in a citation proceeding under Illinois law is nonfinal. *See In re Joint E. & S. Dists. Asbestos Litig.*, 22 F.3d 755, 760 (7th Cir. 1994). In *Asbestos Litigation*, the judgment debtor filed a motion to quash the citation and to dismiss the supplementary proceedings, which the court denied. *Id.* at 758. The court held that the denial was not appealable, because "[t]he denial of a motion to quash the citation proceeding simply lets the proceeding continue and therefore

is not final or appealable." *Id.* at 760. The court then acknowledged that *Resolution Trust* mentioned

a possible exception to the rule that postjudgment discovery orders are not final, but explained that

"[t]his case . . . affords no occasion for its concrete application." *Id.* at 761. The motion to stay the

citation proceedings here is equivalent in all relevant respects to *Asbestos Litigation*'s motion to

quash the citation proceedings. The denial of the motion to stay merely allows the proceedings to

continue, and is not final in any respect.

The defendants' argument that the order was final faces yet another problem. If the order

were final, Judge Brown had authority to enter it only if the parties consented under Fed. R. Civ. P.

73(a). But the parties did not explicitly consent, and the defendants' contention that they consented

implicitly is refuted by the order referring the motion to the magistrate judge. (Dkt. No. 361.) There,

the court explicitly noted that the referral was under Fed. R. Civ. P. 72, which deals with pretrial

orders, not Fed. R. Civ. P. 73. (*Id.*) All parties therefore had notice that Judge Brown's orders here

were non-dispositive, and proceeded based on that understanding. Accordingly, an appeal to the

Seventh Circuit was untimely. It follows that this court has jurisdiction to consider the objections

to Judge Brown's orders and the motion to compel.

II.     The Magistrate Judge's Orders

Before reviewing the merits of the challenge to Magistrate Judge Brown's orders, the court

notes that the Judge Brown had jurisdiction to decide a postjudgment discovery motion. Although

Rule 72(a) states that magistrate judges may receive referrals of "pretrial orders," it is well

established that "pretrial" does not refer to the time in relation to the trial, but instead to the nature

of the order. *Bergeson v. Dilworth*, 749 F. Supp. 1555, 1562 n.3 (D. Kan. 1990). Accordingly, there

is no doubt that "[p]ostjudgment discovery in collection proceedings may also be referred to a

magistrate judge." 14 George K Walker & Joseph C. Spero, *Moore's* § 72.02[7][a] (citing *FDIC v. LeGrand*, 43 F.3d 163, 167 (5th Cir. 1995)).

Because Judge Brown's orders are non-dispositive, under the law the court should affirm them unless the orders are "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a). Here, Judge Brown denied the stay on two grounds. First, Judge Brown concluded that the defendants did not carry their burden of proving that the Indonesian Injunction created a conflict of laws. (Dkt. No. 378, at 9-11.) Second, Judge Brown held that even if there were a conflict, comity principles do not require a stay of the citation proceedings. (*Id.* at 11-13.) Both conclusions were sound, and the court therefore overrules the objections to Judge Brown's orders.

A.    Conflict of Laws

"[T]he party relying on foreign law bears the burden of demonstrating that such law actually bars the production or testimony at issue." *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 541 (N.D. Ill. 2004); *accord United States v. First Nat'l Bank of Chi.*, 699 F.2d 341, 343 (7th Cir. 1983). The court reviews the magistrate judge's decision *de novo*, because "[a] determination concerning the law of a foreign country is a ruling on a question of law." *First Nat'l Bank*, 699 F.2d at 344.

The Indonesian Injunction states that it applies only "temporarily during the examination process of this case." (Dkt. No. 330, Ex. A ¶ 7.) Even assuming that the "examination process of this case" includes the appeal pending in Indonesia, and that the Indonesian Injunction is still in effect, the defendants have submitted no persuasive evidence that Indonesian law will subject the defendants to sanctions if they comply with the citations.

The defendants submitted the expert opinion of Otto Hasibuan, an Indonesian attorney, stating that the Indonesian Injunction exposes the defendants to "substantial monetary fines" if they

comply with the citations. (Dkt. No. 330, Ex. B ¶¶ 17, 18.) As Judge Brown pointed out, however, that opinion is unpersuasive. First, "[t]rying to establish foreign law through experts' declarations . . . adds an adversary's spin, which the court then must discount." *Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 629 (7th Cir. 2010). Second, the authority of Mr. Hasibuan's opinion is even more suspect because it includes no citations to sources of legal authority. This court therefore finds Mr. Hasibuan's affidavit inadequate to satisfy the defendants' burden of showing that there is a conflict of laws that prevents them from complying with the citations.

    B.    Comity

    Even assuming that the Indonesian Injunction applies and would subject the defendants to sanctions if they comply with the citations, however, that fact "does not automatically bar a domestic court from compelling production." *First Nat'l Bank*, 699 F.2d at 345. Instead, the court must balance the interests at stake, considering

> the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the state where the information is located.

*Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275, 1281-82 (7th Cir. 1990). Reviewing courts will overturn a determination under this standard only if the lower court abused its discretion. *Id.* at 1283. Consistent with the deferential standard applicable to district court review of a magistrate judge's ruling on a non-dispositive matter, Fed. R. Civ. P. 72(a), this court will apply the same abuse of discretion standard.

    Here, it is plain that Judge Brown's determination is not an abuse of discretion. Judge Brown determined that the citations specifically identify the information JPMorgan seeks, and that the

-9-

information is critical because without it, JPMorgan will not be able to collect its substantial judgment. Moreover, the "temporary" Indonesian Injunction is several years old now, giving the plaintiff in the Indonesian action ample time to identify and secure any assets necessary to protect its interest in the defendants' assets. Accordingly, Indonesia's interest in maintaining and enforcing the Indonesian Injunction is minimal.

The defendants contend that, although "vital," a litigant's interest in enforcing a judgment is not compelling enough to disregard foreign law. *Reinsurance Co.*, 902 F.2d at 1280. In *Reinsurance Co.*, the court found that a litigant's interest in enforcing a judgment did not outweigh Romania's interest in maintaining state secrets, a value on which Romania placed a "high price." *Id.* Indonesia's interest in maintaining an injunction that is several years old, and likely no longer necessary, is considerably less compelling. Accordingly, Judge Brown did not abuse her discretion by disregarding foreign law in this circumstance. The court will thus overrule the objections to the Judge Brown's orders.

III.     Motion to Compel and for Sanctions

In light of this court's decision to overrule objections to Judge Brown's orders, the court will grant JPMorgan's motion to compel. (Dkt. No. 403.) The defendants' appeal of Judge Brown's orders to the Seventh Circuit (over which, as outlined above, the appellate court lacks jurisdiction because the orders were nonfinal) is still pending, but the defendants have not filed a bond to stay enforcement of the judgment pending appeal. *See* Fed. R. Civ. P. 62(d). Accordingly, the appeal presents no reason to delay the citation proceedings.

JPMorgan additionally requests sanctions, including payment of attorney's fees for bringing the motion to compel and responding to the objections to Judge Brown's orders. The court finds that

the defendants' objections were "substantially justified" and that sanctions are inappropriate. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii). Nonetheless, the defendants' tactics of filing the objections simultaneously with an appeal to the Seventh Circuit suggests an attempt to delay this court's enforcement of the citation proceedings. The defendants insist that they filed both the objections and the appeal because they were uncertain of the correct procedural process for review of Judge Brown's orders. (Dkt. No. 423, at 3.) As outlined above, however, Seventh Circuit precedent—particularly *Asbestos Litigation*, 22 F.3d 755—makes it abundantly plain that the Judge Brown's orders were nonfinal and that filing objections in this court was the proper course. Accordingly, the court will brook no further delay. The defendants shall comply with the citations by April 20, 2012. For each day thereafter on which the defendants are not in compliance with the citations, the court will impose a sanction of $5,000 per day. For each day after May 20, 2012 on which the defendants are not in compliance with the citations, the sanction will increase to $10,000 per day.

An appeal of this order to the Seventh Circuit will not delay the enforcement of the citations unless the defendants post an appropriate supersedeas bond under Fed. R. Civ. P. 62(d). In the absence of a bond, the April 20, 2012 deadline will stand, and sanctions will accrue thereafter in the absence of compliance.

## CONCLUSION

For the reasons stated above, the defendants' objections to Judge Brown's orders  (Dkt. No. 391) are overruled, and JPMorgan's motion to compel (Dkt. No. 403) is granted. The defendants shall comply with the citations (Dkt. Nos. 302, 303) by April 20, 2012. For each day thereafter on which the defendants are not in compliance with the citations, the court will impose a sanction of

$5,000 per day, increasing to $10,000 per day after May 20, 2012. A status hearing is set for April 24, 2012, at 9 am to evaluate defendants' compliance with this order.

ENTER:

_James F. Holderman_

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: April 5, 2012